·  MONTGOMERY LEACH

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

1. JURORS—*competency, as to a pre-existing opinion.* It has been held, that if a juror has made up a decided opinion on the merits of the case, either from a personal knowledge of the facts, from the statements of witnesses, from the relations of the parties, or either of them, or from rumor, and that opinion is positive, and not hypothetical, and such as will probably prevent him from giving an impartial verdict, a challenge for cause should be allowed.

2. But where a juror says he has no prejudice or bias of any kind, for or against either party; that he has heard rumors in relation to the case but has no personal knowledge of the facts, and from the rumors has formed and expressed an opinion in a particular way, if they are true, without expressing any belief in their truth, he would not be disqualified. And this rule has been recognized in a capital case.

3. Where it appears a juror has no fixed opinion in the case, but an opinion merely of a light and transient nature, such as is usually formed by persons in almost every walk of life upon hearing a current report, and which may be changed by the relation of the next person with whom he might come in contact, and which does not show a conviction of the mind and a final conclusion, and an opinion which, at most, is but hypothetical, a challenge on the ground that he has formed or expressed an opinion should not be allowed.

4. EVIDENCE—*in a criminal case—upon a question of malice.* Where a party was on trial for murder, one of the witnesses for the prosecution, on his examination in chief, testified that on the evening of the homicide, at the place where it occurred, but before its occurrence, he saw a knife in the prisoner's bosom, who said if his hand was well he would strike some licks that night. On cross-examination, the defendant's counsel asked the witness

if he knew at the time that there had been a difficulty between the prisoner and another person, not the deceased? *Held:* if the object of this testimony was to show malice against the deceased, and of the cross-examination to induce the jury to believe the remark might have referred to another person, it would, perhaps, have been legitimate testimony for the prisoner, had it been preceded by proof that such other person was there present or expected there. But in the absence of such proof the evidence was properly rejected; and besides, the question should have been confined with reference to time.

WRIT OF ERROR to the Circuit Court of Adams county; the Hon. JOSEPH SIBLEY, Judge, presiding.

This was an indictment for murder, charging Byron Leach and Montgomery Leach with the murder of Andrew F. Price. Upon the trial, Montgomery Leach was convicted of manslaughter, and sentenced to ten years' imprisonment, and Byron Leach was acquitted. To reverse the judgment of the court below this writ of error is prosecuted, and among the errors assigned is the overruling of defendant's challenge, for cause, of the two jurors, George Stopher and Thomas Wallace. The following examination will show the ground of objection.

George Stopher was called as a juror, and on *voir dire* was examined by the State's Attorney as follows:

*Question.* "Have you formed or expressed an opinion as to the guilt or innocence of the defendants?"

*Answer.* "Well, partly I have, from what I have heard."

*Q.* "Have you formed an opinion?"

*A.* "Well, yes sir, I may say I have, according to the way I have heard."

*Q.* "Have you expressed that opinion?"

*A.* "I do not know that I have—I would not be positive."

*Q.* "From what information you have thus far had, have you formed an opinion in your mind as to the guilt or innocence of these young men?"

*A.* "Yes sir, I have."

*Q.* "Do you mean the opinion you speak of that you have formed, is a fixed opinion upon the case?"

*A.* " No sir, I have never formed any fixed opinion `about it."

*Q.* " The state of your mind is open to receive evidence?"

*A.* " Yes sir."

*Q.* You have no idea of the case now that would be in the way of your hearing and judging upon the evidence as it would be given you in the jury box?"

*A.* " I do not know that I have."

Thereupon the State's Attorney accepted the juror.

He was then examined by defendants' counsel as follows :

*Question.* " You said you had heard an account of this transaction?"

*Answer.* " Yes sir."

*Q.* " And had on that formed an opinion as to the guilt or innocence of these defendants?"

*A.* " Partly, from the information I have heard. If the thing was as I heard it, I did form an opinion."

*Q.* " Did you believe what you heard at the time you heard it?"

*A.* " I do not believe everything I hear."

*Q.* " When you heard whatever you did hear, did you then form an opinion as to the guilt or innocence of the defendants?"

*A.* " I formed an opinion if it was as I heard it, if not as I heard it, I had no opinion."

*Q.* " Did you, or not, take as true what you heard, on which you formed an opinion?"

*A.* " I can't say for certain whether I did or not."

*Q.* " You have no such fixed opinion but what you could be governed by the evidence in the case, but that you did form an opinion upon what you had heard about it?"

*A.* " Yes sir, that is the way I feel about it. I have formed an opinion, partly, from what I have heard. When I hear anything, I form an opinion according to the way I hear it. I can only say what I have said about it. I have formed an opinion upon what I heard, if it turns out to be true."

*Q.* " You have heard what purported to be the facts in the case ?"

*A.* " I have heard the case all through. I have heard it spoken of. I formed an opinion at the time I heard it, the way I heard it. I did not form a solid opinion."

*Q.* " You heard what purported to be the facts in the case ?"

*A.* " Yes sir. If the facts were just as I heard them, I would have an opinion, partly. I could not say what I would do when I heard the case. I might have an opinion that a thing was so and so, then afterwards change."

*Q.* " I understood you to say you heard what purported to be the facts in the case, and did form an opinion ?"

*A.* " As I told you before, I had partly formed an opinion in the case, but I never made up my mind how the thing would be until I heard the case. My opinion may be one thing ; then it might change when I heard the thing."

*Q.* " But you did form an opinion upon what you heard, and if the facts turn out as you heard them, you would have an opinion ?"

*A.* " I might have. I don't form any opinion upon anything until I hear it."

The foregoing was all the examination of Stopher on *voir dire.*

Defendants' counsel challenged him for cause, because he had formed an opinion as to the guilt or innocence of the defendants ; challenge for cause overruled, and exception by defendants. Defendants then challenged Stopher peremptorily, and this challenge was allowed.

Thomas Wallace was called as a juryman, and his examination on *voir dire* by State's Attorney was as follows :

*Question.* " Have you formed or expressed an opinion as to the guilt or innocence of the defendants in this case ?"

*Answer.* " I can not say but what I have, partially, from what I have heard and read. I read most of it."

*Question by the Court.* " Is your opinion based upon the fact that if what you heard and read about the case should turn out to be true, then you have an opinion ?"

*A.*  " It was my opinion; if it was as I heard it, I had an opinion, if not, then I had no opinion."

*Question by the Court.*  " Have you formed any other opinion, except in the manner you have stated ?"

*A.*  " I have not formed an opinion in any other way, except in case that what I have stated should turn out to ·be true."

Thereupon Wallace was accepted by the State's Attorney.

He was then examined by defendants' counsel, as follows:

*Question.*  " You say, from what you have read and heard, you have formed an opinion as to the guilt or innocence of the defendants ?"

*Answer.*  " I have read most of the transactions in the papers. I merely formed an opinion from what I read in the papers."

*Q.*  " From what you read, you formed an opinion as to the guilt or innocence of the defendants ?"

*A.*  " Yes sir, from what I read."

*Q.*  " You have that opinion still ?"

*A.*  " Yes sir, as I before stated."

The foregoing comprises all the statements of Wallace on *voir dire.*  Defendants challenged him for cause, on the ground that he had formed an opinion as to the guilt or innocence of the defendants.  The court overruled this challenge, and defendants excepted.  Defendants then challenged him peremptorily, and this challenge was allowed by the court.

Messrs. WARREN & WHEAT, and Messrs. WHEAT & MARCY, for the plaintiff in error, on the question of the competency of jurors, cited the following authorities.  *Collins et al.* v. *The People,* 48 Ill. 145 ; *Gray* v. *The People,* 26 Ill. 344 ; *Commonwealth* v. *Knapp,* 9 Pick. 495, 498 ;  *Cancemi* v. *The People,* 16 N. Y. 504 ; *Baxter* v. *The People,* 3 Gilm. 376 ; *People* v. *Mather,* 4 Wend. 233, 244–5 ; *Ex parte Vermilyea,* 6 Cowen, 555–6, 562–6 ; *Coleman* v. *Hagerman,* cited, 6 Cowen, 564 ; *Nelmes* v. *State,* 13 S. & M. 500, 503–5 ;  *Colton* v. *State,* 31 Miss. 504 ;

*Touts* v. *State,* 7 Ohio State R. 471, 472, 474, 475, 476; *North-fleet* v. *State,* 4 Sneed, 340, 343–4; *Irvine* v. *Kean,* 14 S. & R. 292; *Trimble* v. *State,* 2 Greene (Iowa), 404.

Mr. W. G. EWING, State's Attorney, and Mr. N. BUSHNELL, for the people, as opposed to the position of the counsel for the defendant on the question of the competency of jurors, cited the following authorities. *Smith* v. *Eames,* 3 Scam. 76; *Commonwealth* v. *Webster,* 5 Cushing, 295; *Ex parte Vermilyea,* 6 Cowen, 565; *Gardner* v. *The People,* 3 Scam. 83; *Durell* v. *Mosher,* 8 Johns. 445.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an indictment preferred by the grand jury of Adams county, against Montgomery Leach and Byron Leach, and tried at the May term, 1869, of the circuit court of that county, for the murder of Andrew Price.   Montgomery Leach was convicted of manslaughter, and sentenced to ten years' imprisonment.   Byron Leach was acquitted.

A motion for a new trial was overruled, and the judgment of the court pronounced in accordance with the verdict.

To reverse this judgment this writ of error is prosecuted, and various errors assigned.

We will not undertake to notice all of them with equal particularity, confining ourselves to those most important, and which may be considered as bearing directly on the merits of the case.

The two first errors question the ruling of the court as to the competency of two jurors, namely : George Stopher and Thomas Wallace.   The objection to these jurors was, that they had formed an opinion of the guilt or innocence of the prisoners.

The question involved in this objection has frequently been before this court for consideration.   The leading case is *Smith* v. *Eames,* 3 Scam. 76, where it was held, if a juror has made up a decided opinion on the merits of the case, either from a

personal knowledge of the facts, from the statements of witnesses, from the relations of the parties, or either of them, or from rumor, and that opinion is positive and not hypothetical, and such as will probably prevent him from giving an impartial verdict, the challenge should be allowed. The substance of the rule there announced, is, that a juror is disqualified if he has expressed a decided opinion on the merits of the case. But if a juror says he has no prejudice or bias of any kind, for or against either party, that he has heard rumors in relation to the case but has no personal knowledge of the facts, and from the rumors has formed and expressed an opinion in a particular way, if they are true, without expressing any belief in their truth, he would not be disqualified. This rule was fully recognized by this court, in a capital case, *Gardner* v. *The People,* ibid. 83, and may be considered the established doctrine.

The bill of exceptions shows that both these jurors had no fixed opinion in the case—an opinion, merely, of a light and transient nature, such as is usually formed by persons in almost every walk of life, upon hearing a current report, and which may be changed by the relation of the next person with whom he might come in contact, and which does not show a conviction of the mind and a fixed conclusion—that, at most, it was hypothetical. In such case the challenge should not be allowed. It is very manifest the minds of these jurors had settled down upon no conviction whether the prisoners were guilty or innocent. *Baxter* v. *The People,* 3 Gilm. 368. These jurors were, therefore, competent.

It is also objected by the plaintiff in error that the court, on the cross-examination of Daniel Hunsaker, a witness for the prosecution, refused to permit his counsel to put this question to the witness : " did the witness know at the time, that there had been a difficulty between the prisoner and one Joseph Kately ?"

The bearing of this question will be understood, when it is stated that the witness testified that on the evening of the homicide, and before it occurred, he saw a knife in Leach's

bosom, and that Leach said, " if his hand was well, he would strike some licks that night." Now, if the object of this testimony was to show malice against the deceased, and of the cross-examination to induce the jury to believe the remark might have referred to Kately, perhaps it would have been legitimate testimony for the prisoner, had it been preceded by proof that Kately was there present, or expected there. In the absence of such proof, the evidence was properly rejected. Besides, the question was confined to no time.

It is also objected, that the court refused to permit the prisoner to prove he was advised by his cousin, Walter Leach, to flee, after committing the homicide. Flight sometimes bears upon its face a consciousness of guilt, whether advised or not. But the prisoner had the benefit of this testimony, through other witnesses, one or more of whom testified that after the deceased fell, Byron Leach, a co-defendant, told the prisoner to get his horse and leave the country.

Several objections are made to the manner in which the court disposed of the instructions on behalf of the prosecution and of the plaintiff in error. The instructions were quite voluminous, and that a court, in disposing of them in the hurry of a trial, should commit some errors, is not remarkable. Some given by the court, perhaps, ought not to have been given, and some refused should have been given; but in all the important legal propositions bearing on the facts proved, we think full justice was done the prisoner. The instructions given on behalf of the prisoner, were as favorable as he had any right to demand, and no court is justified in reversing a judgment, if, on the whole record, it appears justice has been done, and there appears no substantial misdirection of the court by which the prisoner's rights were injuriously affected. On reading the instructions, we think, as a whole, they fairly stated the law, and deprived the prisoner of none of his rights. Several of the instructions asked by the prisoner and refused by the court, were mere echoes of instructions already given, and for that reason were properly refused.

Upon the evidence in the record, we are satisfied the homicide was of a most atrocious character, and would have justified the jury in demanding a life for a life.   That of Andrew Price was most remorselessly taken away—hack'd to death by a knife in the hands of a man who had said he would have revenge on him for some trifling matter which should not have disturbed the equanimity of any one.   The only immediate provocation was a blow with the open hand, or fist, and by an unarmed youth, who could not have expected death from the quarter from which it came.   There was no sufficient provocation for the wicked deed.   The prisoner knew he was not in danger of great bodily harm when he dealt his murderous blows, and he should be grateful to the jury who tried him, and to his counsel who defended him, for the mild punishment inflicted.   It was a murderous act—Andrew Price was causelessly done to death, while engaged in a fight with the prisoner, which there is much in the record to show the prisoner brought on in order to gratify that revenge he confessed was lurking in his bosom.

The prisoner has had a fair trial.   He has been deprived of none of his rights, and the judgment of the law ought to rest upon him, as pronounced by the circuit court.

We see no cause for reversing the judgment, and it must be affirmed.

*Judgment affirmed.*