GEORGE ANDREWS, PLAINTIFF IN ERROR, vs. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. The State moved for a continuance of the trial upon an indictment for murder, supporting the motion by a written statement of the State Attorney of what the absent witness would testify if present. The prisoner objected to the continuance on the ground

that the witness had never been before the grand jury, and that the indictment was found without his testimony. The Circuit Judge ruled that the continuance should be granted unless the prisoner should waive the presence of the witnesses and agree that if present he would testify to the facts set out in the statement. The prisoner excepted to the ruling, but thereupon agreed in writing to waive the presence of the witness, and to admit that the witness would, if present, testify to the facts stated. The bill of exceptions purports to give all the testimony used on the trial before the jury which was afterwards impanelled, but neither it nor the record shows that such statement or agreement, or the testimony of the witness, was used on such trial : *Held*, There is nothing to show that the ruling had any effect upon the verdict, and it will not be reviewed in the Supreme Court on a motion for a new trial.

2. A venireman stated on his *voir dire* that he had formed an opinion as to the guilt or innocence of the accused, who was charged with murder, and that it was not formed from hearing or conversing with the witnesses in the case ; that if he went into the jury box he would give a verdict according to the evidence ; "that it would take a reasonable amount of evidence—that it would take conclusive evidence to change his mind." The Circuit Judge ruled that he was a competent juror ; *Held*, To be error and that he was not competent.

3. A venireman stated on his *voir dire* that his opinion was formed from rumor ; that he had never conversed with the witnesses, and his opinion would yield readily to evidence, but he would rather not have heard what he had if he was to go in the jury box. The Circuit Judge ruled he was a competent juror : *Held*, Not to be error.

4. Whether, where a venireman is erroneously ruled to be competent as a juror, notwithstanding his opinions are of such character as in law disqualify him to sit on the jury, and he is afterwards challenged peremptorily by the prisoner, and the record does not show that his peremptory challenges were exhausted before a full jury was sworn, it is a material error for which a new trial will be granted? *Quere?*

5. Where a part of a charge to the jury is excepted to, the whole charge should be considered, and if the charge considered as a whole is free from the objection urged, the exception should be overruled.

6. The Circuit Judge charged the jury that manslaughter in the second

and fourth degrees only, was to be considered by them "for the reason that under the *admission* of the prisoner that he did the killing with design to protect himself, the others are put out of consideration." *Held,* To be error, as no such admission appears in the record.

7. It is error to instruct the jury that the statement of the prisoner of his defence under the statute is to be received with caution because of the position he occupies. The statute gives the right to make this statement unqualified by such comment or caution from the Judge.

8. The doctrine of reasonable doubt does not apply to proof of venue. If the evidence raises a violent presumption that the offence was committed in the county alleged, or it may be reasonably inferred from the evidence, it is sufficient.

Writ of error to the Circuit Court for Escambia county.

The facts of the case are stated in the opinion.

*W. A. Blount* and *J. E. Yonge* for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

Mr. Justice RANEY delivered the opinion of the court:

I. The plaintiff in error was indicted at the spring term of the Circuit court for Escambia county, held in the present year, for the murder of one Peter Clare. On the 16th day of April the prisoner was arraigned and pleaded not guilty, and the State not being ready to go to trial the witnesses for the State and those for the defendant were discharged until the first day of May, on which day the State Attorney moved for a continuance of the case for the term, on the ground of the absence of a witness, F. C. Humphreys, Jr., claimed to be material to the prosecution. The motion is supported by a statement from the State Attorney of what he then expected to prove by the witness; that the application was not made for delay only; that he

expected to procure the testimony at the next term, and that he could not safely proceed to trial without the testimony of the witness. The record shows that the prisoner's counsel objected to the continuance on the ground that such witness had never been before the grand jury, and that the indictment was found without his testimony. The court decided that it would grant the continuance unless the defendant should waive the presence of the witness, and agree that if present he would testify to the facts set out in the statement; "to which ruling the defendant, by his attorney, then and there excepted, and thereupon agreed in writing to waive the presence of said witness, and to admit that the said Humphreys would, if present, testify to the facts stated in said statement." The agreement appears in the record and is signed by the several attorneys representing him in Circuit Court. It is as follows : "Defendant, by his attorneys, agrees to admit that the witness, F. C. Humphreys, would, if present, testify to the facts set forth in this statement, and he waives the presence of such witness." After this a jury was sworn, and the trial proceeded, resulting in a verdict of manslaughter in the second degree, and a sentence by the court to imprisonment in the State Penitentiary for seven years.

There is nothing in the record before us showing that this agreement was ever carried into effect, or, in other words, that the statement, or proposed testimony of Humphreys was ever placed before the jury or used as evidence on the trial. The bill of exceptions purports to give all the testimony used before the jury, on the trial of the issue raised by the plea of not guilty, after the swearing of the jury, but the testimony in question is not incorporated or referred to in it as having been so used, nor does the bill of exceptions, nor any other part of the record, show that it was ever used in any way, or for any other purpose than in

connection with the motion for a continuance. There is neither a showing of such other use, or of an objection thereto. If it was not used before the jury on the trial, but merely before the court on a preliminary motion, as shown by the record and bill of exceptions, before the calling or swearing of the jury, we do not see how it affected the verdict, or how any practical question as affecting the verdict or the prisoner's right to a new trial arises. Action proposed, and to which he objected as being illegal and injurious has not been consummated. He wanted a trial at that term and got one; and on it the State did not avail herself of the agreement, or use the testimony it covered, and to which he had made objection. What has he to complain of? Certainly not the use of either the agreement or the testimony to which he objected. We cannot assume that any testimony was used before the jury but such as the bill of exceptions shows to have been. The questions raised are not really involved in the case before us, and we may remark further that other grounds of objection than those which appear to have really been made to the application for continuance in the lower court, are urged here.

II. The second and third assignments of error relate to the jurors. Upon one Simpson, to whom the second assignment relates, being asked upon his *voir dire* whether or not he had formed and expressed an opinion as to the guilt or innocence of the accused, he answered that he " had, and that such opinion was not formed from hearing or conversing with the witnesses in the case; that if he went into the jury box he would give a verdict according to the evidence; that it would take a reasonable amount of evidence; that it would take conclusive evidence to change his mind." The prisoner challenged Simpson for cause; the court overruled the challenge; the prisoner excepted to the ruling, and then challenged Simpson peremptorily. The third as-

signment of error is as to one Goodman offered as a juror, and who replied to a similar question, "that he had formed and expressed an opinion. It was formed from rumor; that he had never conversed with the witnesses. This opinion would yield readily to evidence. 'I would rather not have heard what I heard to go in the jury box; that is, if I were to go into the jury box, I would rather not have heard what I have heard.'" There was challenge for cause, denial of the challenge and exception, and then a, peremptory challenge as in the case of Simpson.

According to the rule laid down in this State in O'Con-nor vs. State, 9 Fla., 215, and approved in Montague vs. State, 17 Fla., 662, we think Goodman was a competent juror. The opinion he had formed being founded on ru-mor, and being such as could yield readily to the evidence, it did not disqualify him. The preference he expressed that he should not have heard what he had, if he was to go on the jury, does not convey any doubt in himself of his ability to readily yield to or find in accordance with the tes-timony. As to Simpson, we are, however, of a different opinion. When the opinion formed is such that it will "take conclusive evidence to change his mind," we think it has become too fixed to justify the person entertaining it to sit as a juror, even though it was not formed from hear-ing the witnesses or conversing with them. Proffatt on Jury Trial, 186, 187. It is not such a state of mind as will yield readily to the evidence; and in the case before us we should observe the proposed juror, Simpson, does not state it to be either one that will so yield, or one founded upon rumor, nor what it is founded on. In Smith vs. Eames, 3 Scam., 76, it is said: "If such impressions (those founded on re-port) become fixed and ripen into decided opinions, they will influence a man's conduct, and will create, necessarily, a prejudice for or against the party towards whom they

are directed and should disqualify him as a juror; but if, in obedience to the laws of his organization, his mind receives impressions from the reports he hears, which have not become opinions fixed and decided, he would not be disqualified." Stamp vs. Com., 74 Penn. St., 458. Where it appears that conclusive evidence will be required to change the opinion, it has, in our judgment, become too fixed and decided to be reconciled with competency as a juror, and such a juror would not go into the box with a mind either impartial between the State and prisoner, or within easy distance of such impartiality. Leach vs. People, 53 Ill., 311. If it will require conclusive evidence to change his mind, is not it as fixed· as it can be, unless we enter a domain which will not yield to evidence. It is a little difficult to conceive an opinion which is capable of undergoing any change, as more fixed and decided than when conclusive evidence to the contrary is necessary to produce a change. The fact that he states that if taken upon the jury he would give a verdict according to the evidence is not of itself sufficient to overcome the effect of what he has said as to the fixed character of his opinion. If it be urged that he has said that it would take a *reasonable amount* of evidence to change his mind, we reply that he has also said it would take conclusive evidence in the same sentence, and we cannot hold that according to his view the evidence to be reasonable must not be conclusive. He has said it must be conclusive. We cannot eliminate this, or say he did not understand his language. We think there was error in overruling the challenge of Simpson.

The character or strength of the opinion existing, more than its origin, is the principle, if not the proper test of the juror's competency. Proffatt on Jury Trial, §§186, 187; McComas vs. Covenant, M. L. I. Co., 56 Mo., 573.

Whether or not the error is ground for a new trial, in

view of the fact that it does not appear from this record that a full panel of jurors was not obtained before the prisoner had exhausted his peremptory challenges, and that by such ruling and the necessity he was thereby improperly put to of using a peremptory challenge, a juror was put upon him after such exhaustion, to whom he might have objected peremptorily, but for the fact of such ruling, we do not now decide, as we find one ground in another part of the case upon which a new trial must be granted. Montague vs. State, 17 Fla., 664. When, as in this case, it does not appear that the prisoner exhausted his peremptory challenges, and it is true that the jury chosen is in law unexceptionable, what damage has been done the prisoner by the erroneous ruling complained of? Tatum vs. Young, 1 Porter, 298 ; Burt vs. Paujaud, 99 U. S., 180 ; Wilson vs. People, 94 Ill., 299 ; U. S. vs. Corney, 2 Mason, 106.

III. The next assignment of error insisted upon is that the court erred in stating to the jury in the charge what was the leading issue of fact before it.

The judge had instructed the jury as to what constitutes murder in the first degree, and a premeditated design, and stated that it was admitted that Peter Clare was killed by the prisoner. After this statement, the bill of exceptions proceeds, in the same paragraph, as follows: " Then, was the killing in pursuance of a premeditated design to kill? This is what you have to determine from the evidence before you."

" The prisoner," continues the bill of exceptions, in the succeeding paragraph, "says the killing was done because he had good reason to believe that his own life was in danger from Clare at the time of the stabbing. Was that so? He says that Clare had previouly threatened his life, and that at the time of the killing he believed himself in imminent danger that the threat would be executed, he being

at the time in company of Clare, by invitation to settle some matter of dispute as to what had been said by a third party. On the other hand, the State says that the prisoner did not go with Clare down the wharf by invitation, as alleged, but that the prisoner went down the wharf in pursuit of Clare, and that he killed Clare in pursuance of a previous design to do so. This presents the leading issue between the prisoner and the State, and it is your province to decide between them on the evidence you have heard. 'On which side does the evidence place your minds ? If it is true that the parties were in company as the prisoner alleges, and that he killed Clare because his life was in imminent danger from Clare, or had reasonable ground to believe his life in imminent danger, or that there was such danger of great bodily harm, then he had a right to protect himself. But if, instead of this, he pursued Clare in accordance with a previous design to kill him, and did kill him when there was no danger to his own life, or danger of great bodily harm at the time of the killing, that would leave him unjustified. It is for you to say what the evidence proves in this issue." Again, in a subsequent paragraph relating to the same subject, it is said : " The prisoner says, further, that even if his life was not in danger, and he was not in danger of great bodily harm, still he had reasonable ground to believe so. If this is true, his rights of self-protection arise. *　*　*" There is also more upon the same subject.

A careful reading of either the second or the last paragraph shows so plainly that there was no exclusion from the jury of the consideration of defence or self-defence, that comment is unnecessary. Such exclusion is a ground urged in support of the assignment of error.

It is also claimed in support of the assignment of error that a killing in the heat of passion was ex-

cluded by the charge complained of from the considera-
tion of the jury.   The Judge, in charging upon murder in
the first degree, and premeditated design as an element there-
of, says : " The test of premeditated design is whether such
design was formed before the act was committed and when
the mind was in a *cool and collected* state, capable of forming
a deliberate purpose.   The design thus formed need not be
one of long duration.   Any length of time, long or short,
where there has been opportunity for sober reflection, and
in which time it appears the party did exercise his mind
freely and unmastered by *heated passion,* will be sufficient.
If the design be formed on the impulse of conflict only it
cannot be premeditated, nor if it be formed under provo-
cation of threatened violence which arouses a *passion* of
resistance.   It must in short be a design arising from *free,
cool* and *deliberate* exercise of the mind, a product of *malice,*
but not of *heated blood."*   In view of this part of the
charge, it cannot be contended that there was anything in
the part or parts heretofore given which excluded the con-
sideration of a killing in the heat of passion as appli-
cable to or affecting murder in the first degree, the State's
side of the " leading issue " in question.   Any further
consideration of this ground is involved in the assignment
of error to be next considered.

IV. The court, it is claimed, erred in instructing the
jury that the prisoner could be convicted only of murder
in the first degree, or of manslaughter in the second or
fourth degree.   Upon the subject of manslaughter the
charge is as follows :   " As to that I instruct you only in
regard to the second and fourth degrees, for the reason
that under the admission of the prisoner that he did the
killing with design to protect himself, the others are put
out of consideration.   Every person who shall unneces-
sarily kill another while resisting an attempt of such

other person to commit any felony, or to do any other unlawful act, or after such attempt shall have failed, shall be deemed guilty of manslaughter in the second degree. Was the deceased unnecessarily killed by the prisoner while he (the prisoner) was resisting an attempt of the deceased to commit a felony. The prisoner says the deceased was attempting to kill him. If so, that was a felony. Then if the killing was not justifiable under the law I have given you, was it unnecessary, that is, could the prisoner have protected himself without taking life? If so, the killing was unnecessary and would fall under the second degree of manslaughter. But if not that, or murder, or justifiable, was it manslaughter in the fourth degree? That is, where there is any killing by the act of another, when not justifiable or excusable, or not declared murder, or manslaughter in some other degree? This simply means an indefinable killing, which is neither murder, nor manslaughter in any of the other four degrees, nor a killing which is justifiable."

It is contended that a verdict of manslaughter in the third degree might have been found by the jury under the evidence. Manslaughter in the third degree is defined to be "the killing of another in the heat of passion without a design to effect death, by a *dangerous weapon*, in any case except such wherein the killing of another is herein declared to be justifiable or excusable;" (McClellan's Digest, §11, p. 352;) it differing from one kind of manslaughter in the second degree in that the killing in the latter is "in a cruel and unusual manner;" and a dangerous weapon is not specified in the latter as the means of killing.

We do not find anywhere in the case before us an *admission* of the prisoner that he did the killing with design to protect himself. It is true that one of the State's witnesses testifies that the prisoner, in a statement made before him

on the preliminary examination, said : "He thought Peter was going to do some injury to him, and that he stabbed him; that when Peter fell he thought he was stooping down to pick up a rock to strike him, and did not know he was hurt." We do not think this can be taken as an *admission* of the prisoner, justifying the above conclusion and remark of the Circuit Judge. The prisoner, in his statement on the trial before the jury, said : "I started up the street and he attacked me. He kept coming ; I say, 'Peter keep back;' I say, 'Peter leave me alone, I do not want anything to do with you;' he kept coming at me and threw a stone. This was near the blacksmith shop. I say, 'Peter, go away;' I saw him put his hand in his pocket ; I had no intention to kill him ; I stab him. After I stab him, I caught both his hands, and we fell together. I did not strike him, and when I lift him up I saw him dead." This statement expressly denies an intention to kill, and whether or not there was intention to kill was a question for the jury to decide, upon the whole evidence, and not one for the Circuit Judge, or ourselves, to assume from any part of the testimony. Though we do not mean to say that, so far as the credibility of witnesses is concerned, the jury have, in fact, made any mistake, still we do think, and as the case has to go back for a new trial, it is proper to say, that in view of the testimony of some as to circumstances of the killing, the inference of the existence of heated passion at the time of the killing would not have been unreasonable, if their account is to be taken as correct. Upon such new trial the Circuit Judge will, of course, charge as the testimony then adduced may warrant.

V. Another assignment of error is upon the following part of the Judge's charge, in so far as it relates to the prisoner's statement : "You are to form your verdict upon the

39

facts sufficiently proved, and the statement of the prisoner is to be considered by you along with the other evidence in the case, but subject to the same tests as to credibility as apply to the witnesses, but subject further to be received with caution, because of the position he occupies here." The statute provides that in all criminal prosecutions the party accused shall have the right of making a statement to the jury, under oath, of his or her defence. McClellan's Digest, sec. 29, p. 519. In Miller vs. State, 15′ Fla., 577, it was held that such statement, when so made, is for the jury alone, and to be taken by them into consideration with all the evidence in the case, and to be allowed such weight, and such only, as they in their judgment may see fit to give it. This view of it is in our opinion correct. There is nothing in the statute providing as a rule of law that the statement shall be received with caution, or that as a matter of practice the Judge shall instruct the jury to such effect. The statute gives to the prisoner the right of making his statement to the jury unqualified by caution as to the credibility they shall give it in view of his momentous interests. The practice of admonishing a jury against convicting upon the unsupported testimony of an accomplice is in favor of the prisoner, and neither it, nor any other, justifies founding upon this statute a practice which would be, at least, crippling to the right it secures. Looking at the character of the statement in connection with the evidence of the witnesses, we think the Judge erred in so charging the jury.

VI. It is contended that there is no proof that the offence was committed in Escambia county. When a new trial is moved for in a criminal case on the ground that the verdict is unsupported by the evidence, and there is no testimony in the bill of exceptions as to what county the crime charged was committed in, a new trial will be

granted if the bill· of exceptions purports to contain all the testimony admitted on the trial. Evans vs. State, 17 Fla., 192. If the evidence raises a violent presumption that the offence was so committed in the county, or if it may be reasonably inferred from the evidence, it is sufficient proof. Bryan vs. State, 19 Fla., 864; 8 Texas Ct. App., 463. The doctrine of reasonable doubt does not apply to· the proof of venue. Achterberg vs. State, 8 Texas Ct. App., 463; Deggs vs. State, 7 ibid, 359. There is in the bill of exceptions no statement that the crime was committed in Escambia county, but there are references to various localities and landmarks at or near the scene of the killing, known by or probably familiar to the jury, from which, under the liberal rule laid down by the courts, they may have reasonably concluded that the offence was committed in that county. Achterberg vs. State ; Deggs vs. State, *supra ;* Marshall vs. Pennington, 8 Yerger, 423 ; Ewell vs. State, 6 Yerger, 364; Riggs vs. State, 30 Miss., 635. It is true that the venue is almost always positively proved, and it is better that the bill of exceptions should show it.

Judgment reversed and new trial granted.