JASON STEELE, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. When there is no evidence of an overt act upon the part of the deceased, nor any doubt as to who began the encounter, or, as in the case at bar, as to the defendant having begun it, evidence of previous threats, not a part of the *res gestae*, by the deceased against the accused, or of the dangerous character of the deceased, is not admissible.

2. A defendant's statement under oath of his defense is not such evidence of an overt act as to constitute of itself a predicate for the admission of evidence of previous threats by the deceased

Jason Steele v. The State of Florida.—Statement of Case.

against the accused, or of the dangerous character of the deceased, and render the exclusion of such evidence by the trial court reversible error.

3. It is proper to refuse to instruct the jury as to points of law not applicable to the testimony.

4. It is proper for the trial judge, on motion of the State Attorney, to restrain counsel of the accused from commenting on the fact that the prosecution had omitted to introduce two designated persons as witnesses to prove whether threats had been made by the deceased against the defendant.

Writ of Error to the Circuit Court for Walton county.

### STATEMENT.

The shooting of the deceased, William Johnson, occurred on October 10th, 1892, in Walton county, at a house which defendant had built on land claimed by the mother of the deceased, and as to which there had been a contest between the mother of the deceased and the defendant, and which had resulted in favor of the former. The deceased went to the house early on the morning of the day stated, his declared purpose being to compensate the defendant for the improvements he had made. The tenants were moving out that morning. Defendant came after deceased got there, but did not go up to the house, but took a position behind a pine tree about ninety yards from the house. The only witness who saw the deceased at the time he was shot says that his gun was lying on a table in the house not far from the deceased, and that deceased was standing in the door looking towards defendant, and that as he turned his head to look at the witness, his brother, who had entered the house with his gun, the defendant fired on deceased. The other facts, so far as necessary to be stated, will be found in the opinion.

*Daniel Campbell*, for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

RANEY, C. J.:

The State having rested, the defendant introluced one John Campbell, who stated that he knew the deceased, William Johnson, in his lifetime, and the witness was then asked by defendant's counsel if he had heard the deceased shortly before ,the killing make any threats about the prisoner at the bar, and if so where and when they were made, and what they were. The State objected to the question on the ground that no sufficient predicate had been proved to authorize the admission of such threats, and the court having sustained the objection, the defendant excepted. The witness was then asked on behalf of the accused if he knew the reputation of the deceased in the neighborhood in which he lived for peace and quiet, and objection having been made on the ground of the absence from the testimony of a proper predicate for proving such reputation, the objection was sustained and the ruling excepted to. It is entirely clear that up to the time that these questions were asked there was no evidence tending to show an overt act upon the part of the deceased, nor was there any doubt as to who began the encounter, nor doubt as to the defendant having commenced it. Bond vs. State, 21 Fla., 738; Garner vs. State, 28 Fla., 113, 9 South. Rep., 835; Garner vs. State, 31 Fla., 170, 12 South. Rep., 638; Wilson vs. State, 30 Fla., 234, 11 South. Rep., 556. If the purpose of counsel was to prove threats which were part of the *res gestae*, he should have so indicated; there is nothing to suggest that any such purpose was enter-

tained.   The record up to this point shows no ground whatever for the introduction of evidence as to either the dangerous character of the deceased or threats by him against the accused.   After this the defendant made under oath a statement of his defense, and then Campbell was recalled and asked if he had heard the deceased threaten to kill the prisoner, and the question was objected to by the State and the objection sustained and exception taken, and subsequently W. J. D. Cawthon, another witness for the defendant, was asked if he knew the reputation of the deceased in his lifetime in the neighborhood in which he lived for peace and quiet, and the question was followed by a similar objection, ruling and exception; and subsequently the defendant offered to prove by another witness, Davis, who was under examination, that the reputation of the deceased in the community where he lived was that he was a bad, dangerous and desperate man, but the evidence was excluded and exception was duly taken to the ruling.

In Miller vs. State, 15 Fla., 577, decided in 1876, it was held that the sworn statement made by the accused of his defense in a criminal prosecution was for the jury alone, and to be taken by them into consideration in connection with all the evidence of the case, and to be allowed such weight and such only as they in their judgment may see fit to give it.   This view of the statute was approved in Andrews vs. State, 21 Fla., 598, and Bond vs. State, *Ibid*, 738, and in the latter case, decided in 1886, it was also held that the statute did not make the statement of a defendant as to an overt act of the deceased such proof of the act as to constitute of itself a predicate for the admission of evidence of previous threats by the deceased against the accused, or of the dangerous character of the deceased, and

render the exclusion of such evidence by the trial court reversible error. It is unnecessary to repeat here what is said of the statute in the cases named. The construction given the statute has become settled and the practice under it is uniform in the aspects referred to, and we do not think that construction erroneous. That it would be far better to permit an examination and cross-examination of the prisoner, to the extent that the same would not invade any constitutional guaranty, we are satisfied. Such examination would assist him where his defense was meritorious and his disposition truthful, in developing the strong points of the defense, and, judging from our observations both here and at *nisi prius*, the baldness of a pretended defense would seldom be rendered more palpable by the test of examination and cross-examination than it usually is under the present system. This change is, however, a matter of legislative discretion.

Of the instructions specially requested by the defendant and refused, it is sufficient to say that all but two of them were on subjects fully covered by charges already given to the jury. These two were: 1st. That if the jury believed from the evidence that the defendant was in possession of the house when the shooting occurred, and that it was his house, he had a right to be there, and he had a right to go into the house, and the deceased was a trespasser if he was there contrary to the orders of the defendant, or remained there after the defendant ordered him away, and this would be the case although the title to the land was in dispute and subsequently determined adversely to the defendant. 2. That a man who is being kept out of his dwelling house where he is at the time dwelling, has as much right to defend himself against the intruder

as if he was in the house and the intruder was actually attempting to eject him, and he may use such force as may be necessary to defend his domicile, even to take the life of the intruder if it becomes necessary. The the testimony did not call for either of these instructions. The testimony shows that the contest as to the homestead had been decided in favor of the mother of the deceased, and that the defendant's tenants were moving out, that the deceased had gone there for the declared purpose of compensating the defendant for the improvements, and that his expressions and conduct towards the defendant were entirely pacific and in keeping with the purpose referred to; that there was no desire shown by the defendant to enter the house or go nearer to it than a large pine tree, ninety yards therefrom, behind which he had taken position with his Winchester, with no amicable intent in so far as his expressions and conduct proved; that he was requested by deceased, who arrived at the house before the defendant came, to come up to the house, but refused to do so, and that from behind this tree, and after he had promised not to shoot, he, without anything that could be reasonably construed into an overt act upon the part of deceased, shot the deceased. The law of the home as a castle of defense has no place here, and the judge properly refused to give the instructions.

The action of the court in restraining counsel for defendant (not the one now representing him), on objection made by the State, from commenting on the fact that the State Attorney had omitted to introduce Alec. Steele and Cattenhead as witnesses to prove whether threats had been made by the deceased against the defendant, is also assigned as error, but there is no

23

allusion to it in the brief, and it may be treated as abandoned; yet we are entirely satisfied of the propriety of the judge's action in the premises.

The testimony sustains the verdict beyond question, and the judgment must be affirmed. It will be ordered accordingly.