WALTER ROUNTREE v. STATE.

152 So. 20.

Opinion Filed January 6, 1934.

*Koester & Silver,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, and *Roy Campbell,* Assistant, for the State.

DAVIS, C. J.—Walter Rountree, plaintiff in error, was convicted of the crime of murder in the first degree and sentenced therefor to suffer the penalty of death. The case is here on writ of error to review the propriety of the conviction.

The defendant admitted that he shot one Everett Hodges, his brother-in-law, to death on September 17, 1932, at about one o'clock. Justifiable homicide in self defense was the

defendant's plea for acquittal. But in addition to the defendant's plea for an absolute acquittal, the defendant sought by his own testimony as a witness, to give his individual version of the circumstances leading up to the shooting, so as to have the benefit of the jury's consideration of his account of the actuating cause of motive for the killing, as the basis for a possible jury recommendation to the mercy of the court which would have saved his life,· or as a basis for a finding of homicide in a less degree than murder in the first degree. The rejection by the trial judge, on objection of the State's Attorney, of a substantive portion of the defendant's proffered version of the affair, constitutes the principal assignment of error. on which reversal is sought.

It appears from the testimony that on September 16, 1932, the day before the killing, the defendant Rountree had received a threatening letter signed "K. K. K." He took the matter up with an individual supposed to be connected with a secret society of that designation and was informed that the society, the identifying initials of whose title was signed to the letter, had nothing whatever to do with it. The individual in question suggested that defendant take the matter up with the sheriff, which it appears that he did, but without receiving from the sheriff any such encouragement toward a probable rectification of his supposed wrong as he had hoped when he went to see that officer.

Defendant then undertook to relate how on that night before the killing he had engaged in a discussion with his wife about the letter, and its probable author, and that in such conversation his wife had admonished him not to worry about it,—that it had probably been sent by Everett Hodges, who was the wife's sister's husband. The conversation alleged to have been held by defendant with his wife on the

night prior to the homicide which occurred at one o'clock the next day, was ruled out by the Court on objection by the State's Attorney and with that ruling went the defendant's attempted account of what his wife had then told him concerning attempts by Hodges to break up defendant's home as well as an attempt on one occasion to perpetrate on the wife the crime of rape.

The rejected evidence was not admissible for any purpose except to throw light on the defendant's state of mind shortly prior to the homicide, but it was, it seems to us, clearly admissible for that purpose, since the charge against the defendant was murder in the first degree and the State was insisting on a conviction for that degree, without a recommendation to the mercy of the court, which recommendation to mercy, if made by the jury, would reduce the punishment incident to a conviction for first degree murder, from death to imprisonment in the penitentiary for life, as well as possibly showing even a less degree of culpable homicide than first degree murder. See Whidden v. State, 64 Fla. 165, 59 Sou. Rep. 561.

The prosecution itself laid the basis for the defendant's testimony giving his own version of the facts and circumstances leading up to the killing of Hodges. Defendant's rejected version was in rebuttal of the State's attempted showing that the homicide was perpetrated cold bloodedly through express malice and affirmative premeditation to redress a supposed wrong that the defendant had no reasonable ground for believing he was suffering from the murdered man's interference in his (defendant's) domestic affairs through the sending of anonymous letters and otherwise. This does not imply, of course, that the defendant was legally justifiable or excusable from the consequences for murder in the first degree, with or without a recom-

mendation to the mercy of the court, if he deliberately sought out and slew his supposed tormentor with premeditated design to kill him, from the motive which the State presented as its theory of the homicide. But it does mean that where a defendant is on trial for his life, and the State has undertaken to present a state of facts tending to make out a case of purely malicious revenge on a supposed enemy as the motive for a premeditated murder charged against such defendant, that the defendant, when testifying in his own behalf as the sole witness in his own defense, should not be deprived of the right to tell his story of the affair which, if related, may show a motive or causation for the killing that is materially different from the cold-blooded one ascribed and charged by the State.

Section 8385, C. G. L., 6080 R. G. S., provides that in all criminal prosecution the accused may *at his option* be sworn as a witness in his own behalf, and shall in such case be subject to examination as other witnesses. Prior to the enactment of this statute it was the privilege of an accused person charged with felony to present verbally, in his own language and manner, matters pertaining to his defense consisting of such facts and circumstances as would go to excuse the offense and negative the idea of a specific intent, if that was a material element of the crime charged. Then, after the defendant on trial had been permitted to give his version of the affair, it was for the jury alone to take the defendant's story into consideration, in connection with all the evidence in the case, and to allow it such weight, and such weight only, as they (the jury) might, in their judgment, see fit to give it. Miller v. State, 15 Fla. 577; Higginbotham v. State, 19 Fla. 557; Andrews v. State, 21 Fla. 598; Bond v. State, 21 Fla. 738; Hawkins v. State, 29 Fla.

554, 10 Sou. Rep. 822; Ortiz v. State, 30 Fla. 256, 11 Sou. Rep. 611; Ballard v. State, 31 Fla. 266, 12 Sou. Rep. 865.

In Lester v. State, 37 Fla. 382, 20 Sou. Rep. 232, this Court construed the present section of the statute, which was an amendment to a previous one that did not require the defendant to subject his sworn statement to cross examination, as being intended to enlarge the pre-existing law as to require the defendant, if he does take the stand to testify in his own behalf, to do so as a witness subject to cross examination respecting the testimony he gives pursuant to this privilege. But it has never been held that the defendant's *privilege* of becoming a sworn witness in his own behalf, although subject to cross examination on his testimony, has deprived the defendant of his right to detail facts which tend to throw light on his own motives and individual intent in being found in a particular situation or in doing a particular act, when such motive or intent has been first put in issue by the prosecution. Such testimony *as to motive and intent,* when given by the defendant, is of course to be weighed and considered by the jury in the light of the law as charged by the court, and like any other testimony relating to motive and intent, must not be so remote as to make it subject to exclusion on the ground of irrelevancy.

In the present case the jury might well have found a verdict of first degree murder and yet reduced the punishment from death to life imprisonment, if the defendant had been allowed to testify to a state of facts told him by his wife the night before, which, inciting the defendant to brood during the night over the real or imaginary wrongs he believed (with some measure of substantiation thereof) had been done him by the man he killed the next day in an encounter with the deceased, which aggravation appears to have caused defendant to seek an interview with deceased,

wherein the latent heat of defendant's smoldering passion, engendered by slow, continuous, pernicious and persistent persecution, apparently blazed forth against his supposed tormentor, accompanied by a mental act or emotion at the time perhaps amounting to a premeditation in law, but not necessarily amounting to that cruel form of premeditation which the jury would likely believe under the circumstances should be punished by a forfeiture of the defendant's life, through an omission on the jury's part to recommend mercy for him when they found him guilty of murder in the first degree.

Reversed for a new trial not inconsistent with the holding of this opinion.

WHITFIELD and TERRELL, J. J., concur.

ELLIS and BUFORD, J. J., dissent.

BUFORD, J. (dissenting).—In this case an opinion has been prepared by Mr. Chief Justice DAVIS which proposes to conclude with a judgment of reversal on the ground that the defendant, plaintiff in error here, was not allowed to testify the details of a conversation which occurred between himself and his wife on the night preceding the homicide.

I think the testimony was properly excluded and that no error was committed by the trial judge in that regard. Had the evidence been admitted it would have been merely hearsay and, aside from this, the record discloses no proffer to show what the rejected testimony would have been, had it been allowed to go to the jury. Therefore, there is no way for us to determine whether or not there would have been anything in the testimony which was relevant or material to the issues involved.

There is nothing in the record to indicate that the evidence sought to be adduced could have had the effect, if shown to be true and believed by the jury, of reducing the

crime of murder in the first degree to some lesser degree of unlawful homicide.

The record is amply sufficient to sustain a verdict and judgment for murder in the first degree.

If there were extenuating circumstances connected with the homicide, the proof of which was incompetent to be adduced as evidence in the trial court, such circumstances might be properly considered by the State Board of Pardons upon timely application to that tribunal. But, I think that trials should be conducted according to the fixed legal principles concerning the admission or rejection of testimony and that the trial court should not be held to have committed reversible error when he has ruled in accordance with such fixed principles.

Therefore, I think, the judgment should be affirmed.

ELLIS, J., concurs.