HENRY C. SMITH, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. Under section 1, Chapter 4015, Laws of Florida, providing that grand and petit jurors shall be taken from the registered voters who have paid their last assessed capitation tax in their respective counties, does not contemplate that said tax shall be paid before it becomes due and payable under section 44, Chapter 4010, acts of 1891; and where a grand jury was duly organized for a term of court on the 13th day of October, A. D. 1891, it is held that a failure to pay the capitation tax for that year does not disqualify them to serve as jurors.

2. The act, *supra*, Chapter 4015, is not in conflict with Article III, section 16, Constitution of 1885.

3. When an indictment for forgery undertakes to set forth the instrument alleged to be forged according to its tenor, great par-

ticularity is required and any variance as to the words of such instrument, unless the same be mere fault of spelling, will be fatal, but in an indictment for forgery of any order for the payment of money, the words and figures in the margin of the order, and which constitute no part of the instrument, need not be set out, unless they constitute an essential description of the order.

4. Where the ground of the objection to the introduction of a paper in evidence is not stated, and no exception is taken at the time to the decision of the court overruling the objection, the party cannot avail himself of an exception to such decision in a motion for a new trial.

5. The voluntary statement of an accused in reference to his connection with an offense, may be shown by the State to be untrue.

6. An order drawn by a County Board of Public Instruction, as an allowance for an account approved by the board, and directed to the County Treasurer for the payment of money, is such an instrument, within the meaning of our statute, as can be the subject of forgery.

7. In an indictment for forgery of a check, promissory note or order for the payment of money it is sufficient to set out, in the indictment, the alleged instrument, *in hæc verba*, with the names of the makers, and payees on it, together with proper averments, that the accused falsely made, forged and counterfeited said instrument with the intent to defraud.

8. Motions in arrest of judgment reach only such errors as are apparent upon the record, and the sufficiency of the evidence to sustain a verdict cannot be considered on such motion.

9. Evidence of venue in a criminal prosecution need not exclude every reasonable doubt, but where the evidence raises a violent presumption that the offense was committed within the jurisdiction alleged, or if this can be reasonably inferred from the evidence, it will be sufficient.

10. A general exception to an entire charge that contains a correct

proposition of law is not good, but under our practice it devolves upon the party to properly except in the trial court to the portion of the charge supposed to be erroneous.

RANEY, C. J. (TAYLOR, J., concurring):

*Held,* That the testimony as shown by the record fails to connect the accused with the act of forgery, or with the instrument in its altered condition, or with the proceeds thereof, or with the person to whom it as altered was paid and, though showing circumstances of suspicion, was insufficient to sustain a conviction. MABRY, J., dissenting, held that the testimony was sufficient to connect the accused with the alteration and sustain the verdict.

Writ of Error to the Circuit Court for Madison county.

The facts in the case are stated in the opinion of the court.

*W. C. McCall* for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

MABRY, J. :

On the 15th day of October, A. D. 1891, the plaintiff in error was indicted in the Circuit Court for Madison county. The indictment, leaving out some of its formalities, is as follows : The grand jurors for the State of Florida, duly chosen, empanelled and sworn diligently to inquire and true presentment make in and for the body of the county of Madison, and third judicial circuit of said State, upon their oaths present that Henry C. Smith, late of said county, laborer, on

the first day of June, A. D. 1891, at and in the county, circuit and State aforesaid, with force and arms with intent unlawfully, wilfully and wickedly to injure and defraud the Board of Public Instruction of Madison county, State of Florida, of moneys held by said board for the use of the common schools of said county, then and there in the hands of the County Treasurer of said county, one order given by the said board as aforesaid, payable to the order of one R. L. Williams, for the sum of three dollars, said order being in writing and having the words "three dollars," and the figures "$3.00" written thereon, and being directed to and drawn on the County Treasurer of said county for payment, and signed by J. E. Pound, Chairman of the Board of Public Instruction of said county, and R. L. Williams, Superintendent of Public Instruction of said county, which said order is in words and figures as follows, to-wit:

$3.00    OFFICE OF BOARD OF PUBLIC INSTRUCTION ⎱
                OF MADISON COUNTY, FLA.    ⎰

*To the Treasurer of Madison County:*

Please pay to the order of R. L. Williams the sum of three dollars, and charge to account of Board of Public Instruction of Madison county, Florida; account approved by Board of Public Instruction May 26th, 1891.   No. 388.          R. L. WILLIAMS,
                    · Superintendent Public Instruction.
    J. E. POUND,
            Chairman Board Public Instruction.

Not intended as a circulating medium.

Did then and there forge by altering the words "three dollars," and the figures "$3.00," and changing them from "three dollars" into "thirty dollars," and from "$3.00" into "$30.00," and which said forged order is in words and figures as follows, to-wit:

$30.00.    OFFICE OF BOARD OF PUBLIC INSTRUCTION }
                OF MADISON COUNTY, FLA.          }

*To the Treasurer of Madison County :*

Please pay to the order of R. L. Williams the sum of thirty dollars, and charge to account of Board of Public Instruction of Madison county, Florida ; account approved by Board of Public Instruction May 26th, 1891.    No. 388.        R. L. WILLIAMS,

Superintendent Public Instruction.

J. E. POUND,

Chairman Board Public Instruction.

Not intended as a circulating medium.

Contrary to the form of the statute in such cases made and provided.

At the same term the accused was arraigned upon this indictment, and, after plea of not guilty, was tried and convicted of the offense therein charged.   Motions in arrest of judgment and for a new trial were made and overruled, and the case is before us by writ of error.   The grounds of the motion in arrest of judgment are :

1. "Because there is no crime charged ; the instrument alleged to be forged not being included in the

statutes of this State, and as such could [not] be forged."

2. "The indictment does not allege that J. E. Pound, as chairman, and R. L. Williams, as Superintendent, had authority to sign and did sign said forged paper—it does not allege that they were such officers."

3. "The indictment does not charge that the offense was committed in two years before the finding of the indictment; and the evidence does not show the offense was committed on the day alleged."

4. "The evidence does not establish the guilt of the prisoner; and the forging and intent to defraud does not appear therefrom."

The grounds for new trial are:

1. "The prosecution failed to prove the *venue*."

2. "The verdict is contrary to the law and the evidence."

3. "The verdict of the jury is contrary to the charge of the court."

4. "The court erred in admitting in evidence school warrant No. 378."

5. "The court erred in defining to the jury what a reasonable doubt is."

6. "The indictment does not allege the offense was committed in two years before the filing of the indictment."

7. "The court erred in admitting school warrant No. 388, over the objection of defendant, because it was

not the paper alleged to have been forged and set forth in the indictment.''

We will dispose of the assignments of error in the order in which they are made here. The first and second are that the court erred in sustaining the demurrer to the first and third pleas in abatement, and in adjudging the second insufficient.

It appears from the record that before arraignment the accused filed a plea in abatement, alleging that the indictment was found by an illegal grand jury : First, because an act entitled an act in relation to jurors, approved June 8th, 1891, under which said grand jury was summoned, empanelled and organized, was and is in violation of Article III, Section 16, of the Constitution of the State, and is void ; second, because if said act should be held by the court to be constitutional, no member of said grand jury at the time of the organization thereof had paid the last capitation tax which had been assessed against him in said county of Madison for the year 1891, before the summoning, empanelling and organization of said grand jury, and which said tax was assessed on the first day of October, A. D. 1891, and the same is still unpaid ; third, because the act of June 8th, 1891, does not go into effect until January first, 1892. It appears that the State Attorney joined on the first and third grounds of defendant's plea, and demurred to the second. The demurrer was sustained, and the record recites that the court adjudged the first and third insufficient. We assume from the recital in the record that a trial was had by

the court on the issues tendered as to the first and third grounds of the plea. A demurrer to all the grounds of the plea would have presented a proper issue, because whatever questions they sought to present were of a legal nature, and to be settled by the court. It appears that the legal sufficiency of the entire plea was passed upon by the court, and we will examine it to see if there are any merits in it. The court, during which the indictment was found, was organized on the 13th day of October, A. D. 1891. Upon its appearing to the court that no grand jury had been drawn and summoned as provided by law, by special order of the court the jurors for the term were summoned from the body of the county at large.

The second ground of the plea, the one demurred to, attempts to set up the non-payment of the capitation tax for the year 1891 as a disqualification of the jurors who found the indictment. The act of the Legislature, approved June 8th, 1891, Chapter 4015, Laws of Florida, in the first section provides that "grand and petit jurors shall be taken from the registered voters who have paid their last assessed capitation tax in their respective counties." Section 14 of Chapter 4010, passed at the same session of the Legislature, provides a "poll tax of one dollar shall be levied upon each male person over the age of twenty-one years, which tax shall be paid into the county school fund, and shall be collected when taxes on property are collected." Section 44 of this act provides that all taxes shall be due and payable after the first Monday in November of each and

every year. It is evident that the capitation tax for the year 1891 was not due when the indictment was returned against the accused, as this was on the 15th day of October, A. D. 1891. It is true that the county assessor regularly between the first day of January and the first day of July of each year shall make out an assessment roll of all the taxable property in the county, including the names of all persons subject to pay the capitation tax, and return it to the Board of County Commissioners at their meeting in July. This roll after being examined and equalized by the county commissioners under certain proceedings extending to the first of October, shall then be certified by them as having been examined and found correct. The assessor after this annexes to one of the rolls required to be made, the warrant provided by the statute, and delivers it to the collector of revenue. Taxes then become due and collectable after the first Monday in November of each year. If for any cause a delay has occurred in preparing the assessment rolls, provision is made for an extension of time. The statute of 1891, in providing that jurors shall be taken from the registered voters who have paid their last assessed capitation tax in their respective counties, does not in our opinion contemplate the payment of this tax before it becomes due. Within the meaning of this statute the terms "last assessed capitation tax," refers to a tax that is due and payable. The jurors in the present case were summoned and empanelled in October, before the tax became due, and the failure to pay the poll tax for that year did not disqualify them as jurors. Under the rev-

enue act, taxes shall be due and payable after the first Monday in November of each year, and the collector is required to collect by levy and sale of the goods and chattels assessed, all taxes that remain unpaid on the first day of March of each year. Whether or not a juror would be so in default in not paying his capitation tax as to disqualify him before the expiration of the time allowed to pay without coercion, it is not necessary here to say. The facts of this case only make it necessary for us to decide that within the meaning of the jury act, the last assessed capitation taxes do not include those not payable.

The first ground of the plea in abatement is, that the act of 1891, Chapter 4015, under which the grand jury was organized, is in violation of Article III, Section 16, of the Constitution of 1885. It is claimed, in the first place, that the title of the act is not broad enough to include the provisions of the act. The title of the act is, "An act in relation to jurors." The Constitution provides that each law shall embrace but one subject and matter properly connected therewith. The subject of the act in question is jurors, and it becomes apparent from a reading of this statute that all of its provisions are germane to the subject and properly connected therewith. Gibson vs. State, 16 Fla., 291. In the second place, it is contended that this act repeals or revises a law without setting forth the law repealed or revised. There is nothing in this contention. The Constitution provides that "no law shall be amended or revised by reference to its title only; but in such

case, the act as revised, or section as amended, shall be re-enacted and published at length." The statute before us does not undertake to revise or amend any former law. The effect of it may be to repeal portions of former laws, but this would not render it invalid because the portions repealed were not specially mentioned and set out. As to the other ground, that the act did not take effect until January, 1892, it is only necessary to say it was approved June 8th, A. D. 1891, and no provision is therein made when it shall take effect. The Constitution provides that "no law shall take effect until sixty days from the final adjournment of the session of the Legislature, at which it may have been enacted, unless otherwise specially provided in such law." Our conclusion is, that the plea in abatement presented no valid objection to the indictment.

The third and fourth assignments of error are, that the court erred in admitting in evidence the two school orders, one numbered 378 and the other numbered 388. The indictment shows that the accused was charged with forging order number 388. The objection to the introduction of this order is, that there is a variance between it and the paper set out in the indictment, and alleged to have been forged. The variance alleged consists in the omission from the top of the paper set out in the indictment the words "not intended as a circulating medium." It seems that the order in question had printed or written at the top, and also at the bottom, the words "not intended as a circulating

medium," and in the copy set out in the indictment, the words at the top were omitted. The indictment undertakes to set out the alleged forged order, in words and figures. Great particularity is required of the pleader in such cases. Mr. Wharton says: " When an indictment undertakes to set forth, as in forgery or libel, a document according to its 'tenor,' or 'follows,' then any variance as to the words of the document, unless such variance be mere fault of spelling, is fatal." Wharton's Criminal Evidence, sec. 114. The authorities cited by this author fully sustain the rule he announces: Ex parte Rogers, 10 Texas Ct. App., 655; State vs. Townsend, 86 N. C., 676. On the other hand, an indictment for forgery of a promissory note, or order for the payment of money, need not set out any matter written upon the same paper, constituting no part of the obligation, and not entering into an essential description of it. While a strict recital of the very words of the forged order is required, the numbers, vignettes and devices, or the words and figures in the margin, which constitute no part of the contract of the instrument, need not necessarily be given. Of course such marginal characters can be made descriptive of the instrument, and then the same strictness will be required of them as any part of the paper. The forgery alleged in the present indictment consists in raising the amount of a school order, or warrant. We have not the original before us, but from the record it appears that the words omitted are written or printed

in the margin above the date and body of the order. The same words appear in the margin at the bottom, and they are accurately set out in the indictment. It has been held that where the counterfeit bill offered in evidence contained the word "three" six times on the margin at the top of the bill, and also close upon the margin the words and figures "capital stock $100,000, secured by pledge of $100,000 Pennsylvania 6 per cent. bonds," and no mention was made of such words and figures in the copy set forth in the indictment, there was no variance, because what was omitted constituted no part of the bill. The same view was taken where the forged note offered in evidence had upon its face the words "countersigned and registered in the bank department," with the signature of the register. And so the words "school order" on the face of an instrument, constituting no part of the contract, but being the trade mark of the printer of the order, may be omitted on the copy in the indictment. Our judgment is, that the omitted words in the margin of the order in question constituted no part of the forged order, and there was no essential variance between the order recited in the indictment and the one introduced in evidence. The following authorities on this point are referred to : Langsdale vs. People, 100 Ill., 263 ; State vs. Wheeler, 35 Vt., 261 ; Wilson vs. People, 5 Parker's Crim. Rep., 178 ; Perkins vs. Commonwealth, 7 Gratt., 651 ; Commonwealth vs. Bailey, 1 Mass., 62 ; Commonwealth vs. Stevens, *Ibid*, 203 ; Commonwealth

vs. Taylor, 5 Cush., 605 ; State vs. Carr, 5 N. H., 367 ; Griffin vs. State, 14 Ohio St., 55 ; People vs. Franklin, 3 Johnson's Cases, 299 ; Miller vs. People, 52 N. Y., 304 ; Mee vs. State, 23 Texas Ct. App., 566 ; State vs. Grant, 74 Mo., 33.

Objection was made to the introduction in evidence of school order number 378. This order as introduced in evidence was for thirty dollars and eighty cents, payable to the order of H. C. Smith. The State proved by the superintendent and the chairman of the Board of Public Instruction of Madison county, that this school order was issued and delivered to the accused for three dollars and eighty cents, and that it had been altered to the larger sum. The ground of the objection to the introduction of this order in evidence is not stated ; nor was any exception taken to the decision of the court in overruling the objection. The two forged school orders were issued at the same time, one to Williams, and endorsed to the accused, and the other directly to him. A fraudulent intent is a material and essential ingredient in the crime of forgery. If the accused fraudulently altered the school order number 378, it would afford legitimate evidence tending to prove a fraudulent intent in altering, if he did, the order upon which the indictment was based. Wharton's Crim. Ev., sec. 38 *et seq.;* Hennessy vs. State, 23 Texas Ct. App., 340. It is true that he could not be convicted on the indictment in question for forging school order number 378, and the only legitimate pur-

pose for which it could be admitted in evidence was to throw light upon his motives in altering the other order, if he did alter it. The State having shown that both orders went into the hands of the accused in their original state and were subsequently changed, in the absence of rebutting testimony on his part, a presumption arises that he fraudulently altered the order upon which the indictment is based. It was the right of the accused, however, to have the evidence submitted to the jury in its legal bearing, and if he had made the proper objections, he could have availed himself of this right. This he did not do, and no further discussion is necessary on this point.

The fifth error assigned is, that the court erred in admitting in evidence what the accused said before the school board about school order number 378. It seems that the accused appeared before a meeting of the school board in September, 1891, and asked permission to remain in the room during its session. While there the order number 378, which had been returned by the treasurer to the board as paid, was examined and found to be changed. The accused stated to the board that he gave the order to Mrs. Morrison, and had no more to do with it, and that he was not guilty. Mrs. Morrison testified that the accused did not give her the order. We perceive no error in the ruling of the court admitting this statement of the accused in evidence. It was a voluntary statement made at the time the forgery was detected, and it was competent for the

State to put in evidence this statement and then show that it was not true.

It is alleged that the court erred in overruling the motion in arrest of judgment. The first ground of the motion is, that the indictment does not charge any crime, because the instrument alleged to have been forged is not one embraced within the forgery statutes of this State. Among other instruments of writing which are the subjects of forgery under our statute, it is provided that "Whoever falsely makes, alters, forges, or counterfeits a * * bill of exchange, or promissory note, or an order, acquittance or discharge for money or other property, or an acceptance of a bill of exchange, or indorsement, or assignment, of a bill of exchange, or promissory note, for the payment of money, or an accountable receipt for money, goods or other property, with intent to injure or defraud any person, shall be punished," etc. The position of counsel for plaintiff in error is, that there is no law authorizing the issuance of the order alleged to have been forged, and the same is void, and not the subject of forgery. It is conceded that if the paper on its face does not appear to have any legal validity, and is in its essence void, and incapable of effecting a fraud, no forgery can be predicated upon its alteration. Mr. Bishop says: "Forgery at the common law is the false making or materially altering, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of a legal liability." 2 Bish. Crim. Law, sec. 523. Under our statutes county treasurers are the custodians of the

county school funds, and the county boards of public instruction, which are made bodies corporate, have control and management of county school interests. A chairman of the board is elected, and the county superintendent is made, by statute, secretary of the board. This board is authorized, among other things, to purchase school sites and premises, and to employ teachers for the education of the youth of the county; and also to audit and pay all accounts due by the board of public instruction. The order alleged to have been forged shows on its face to be an allowance for an account approved by the board of public instruction as a proper charge against said board. It is an order directed to the treasurer to pay the sum mentioned therein for an account approved as a valid demand against the county board of public instruction, and in our judgment is such an instrument, within the

meaning of our statute, as can be the subject of forgery. It is a writing which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability against the board of public instruction of Madison county, and within the light of the authorities is such an instrument as can be forged. Crain vs. State, 45 Ark., 450; Ball vs. State, 48 Ark., 94; State vs. Fenly, 18 Mo., 445; Rembert vs. State, 53 Ala., 467; Arnold vs. Cost, 3 Gill & Johnson, 219; 22 Am. Dec., 302, note; Hendricks vs. State, 26 Texas Ct. App., 176; 8 Am. State Rep., 463, *note;* Langdale vs. People, *supra.*

The second ground of the motion in arrest of judg-

ment is, that the indictment does not allege that J. E. Pound, as chairman, and R. L. Williams, as superintendent, had authority to sign, and did sign, said forged paper, and does not allege that they were such officers. The authorities hold that where a party is charged with forging a check, promissory note, or order, for the payment of money, it is sufficient to allege in the indictment that he falsely made, forged and counterfeited the writing with intent to defraud some person, setting out the instrument *in hæc verba*, with the names of the makers, endorsers and payees on it. By pursuing this course it is made to appear to the court that the forging was of an instrument in writing, being, or purporting to be, the act of another, by which rights or property are liable to be affected, and the court can see and judge for itself what is the nature and extent of the obligation contained in the paper. Cross vs. People, 47 Ill., 152 ; State vs. Fenly, *supra ;* Rembert vs. State, *supra ;* State vs. Johnson, 26 Iowa, 407. The order before us shows that it was signed by J. E. Pound, chairman board of public instruction, and R. L. Williams, superintendent of public instruction. The testimony showed that these parties were respectively the officers mentioned, and that they acted for the board in issuing the order in question. The indictment was sufficient in this respect.

The third ground of the motion in arrest of judgment, that the indictment does not charge that the offense was committed within two years before the finding of the indictment, has no foundation in the record. The indictment distinctly alleges that the

offense was committed on the first day of June, A. D. 1891. The other grounds of this motion need not be noticed. Motions in arrest of judgment reach only such errors as are apparent upon the record, and we can not consider on such motion, the sufficiency of the evidence to sustain the verdict of the jury. Bacon vs. State, 22 Fla., 51 ; Jordan vs. State, *Ibid*, 528.

The overruling of the motion for a new trial, is also assigned as error. The first ground of this motion is, that the prosecution failed to prove the venue. It is essential that the State should prove the venue alleged, but this need not be done to the exclusion of every reasonable doubt. If the evidence raises a violent presumption that the offense was committed within the county named, or if this can be reasonably inferred from the evidence, it is sufficient. Andrews vs. State, 21 Fla., 598 ; Warrace vs. State, 27 Fla., 362 ; 8 South. Rep., 748. The evidence shows that the school order was issued in Madison county, Florida, in June, 1891, and was delivered to the accused, in said county, the day it was issued ; he lived in Madison county, and was teaching school there. Within the liberal rule applicable in proving venue, we think enough is shown in the record from which the jury could reasonably have inferred that the offense was committed, if at all, in Madison county.

The fourth and seventh grounds of the motion for new trial, in reference to the admission in evidence of the school orders, have already been considered.

The fifth ground is, that the court erred in defining

a reasonable doubt. The particular portion of the charge supposed by counsel to be erroneous is not pointed out. In one portion of the charge the judge instructed the jury that the evidence should satisfy them of the guilt of the accused beyond a reasonable doubt. This portion is certainly correct. There is more of the charge on the subject of a reasonable doubt. A general exception to an entire charge that contains a correct proposition of law, is not good. The good and the bad, if any be bad, can not under such an exception be separated. Under our practice it devolves upon the party to properly except in the trial court to the portion of the charge supposed to be erroneous. Metzger vs. State, 18 Fla., 481 ; Baker vs. Chatfield, 23 Fla., 540 ; 2 South. Rep., 822 ; Pinson vs. State, 28 Fla., 735; 9 South. Rep., 706.

The following is substantially the testimony introduced on the trial of this cause :

R. L. Williams, a witness for the State, superintendent of public instruction, and secretary of the board of public instruction of that county, testified : That J. E. Pound is chairman of the board, and, on being handed the warrant or order in question, No. 388, stated in substance : It was issued by the board to the order of witness, and was given by him to the defendant, it being then an order for $3, but having since been altered to $30. The account was approved by the board May 26th, 1891, and issued June 6th, 1891. The way in which I came to give this order to Smith was this : I owed Smith three dollars, and offered to pay

him cash, but Smith said "scrip would do him as well; he could use it dollar for dollar." School scrip was then at a discount from ten to fifteen *per cent.* The county treasurer returns all the school scrip paid by him to the board of public instruction once a year, when the board meets to verify his accounts. Among the warrants returned by him was one No. 388; that the board met on the 22d of September last. The object of the meeting was to verify the orders returned by the county treasurer. Smith came in and presented to Mr. Pound his recommendation from the patrons of the school he had been teaching as principal thereof. Mr. Pound told him it was all right as far as it went, but was not endorsed by the supervisor of the school, and that as the board required that, he could not consider it. Smith then asked permission to remain in the room during the meeting of the board. No other teachers were present. In verifying the orders we came to No. 378, payable to the order of H. C. Smith, and found it was raised from $3.80 to $30.80. As soon as we found it out, Smith got up and explained that he knew nothing about it, and that he gave the order as a $3.80 order to Mrs. Morrison. In about ten or twenty minutes we reached warrant No. 388, the one I gave Smith for what I owed him. Smith said I did not give it to him, that I paid him in cash, and that he knew nothing about the forgery of either of these warrants. Warrant No. 388 when returned to the board by the county treasurer was changed from $3 to $30.

CROSS-EXAMINATION. The change in warrant 388 is not in Smith's ordinary handwriting. I stated on the

preliminary examination that I was not certain that I gave Smith this warrant, but since then I have had occasion to examine my stub books, and found that this is the only $3 warrant issued to my order during the whole year, and as I am positive I gave Smith a $3 warrant payable to myself, therefore I am positive this is the warrant I gave Smith. He has taught school here ever since I have been superintendent of public instruction, about three years.

The warrant was put in evidence, as was the stub to the warrant, which was identified by the preceding witness. Warrant No. 378, payable to the order of defendant, was also put in evidence, it purporting at the time to be for $30.80.

J. E. Pound, a witness for the State, testified in substance: I was present on September 22d last, at the meeting of the board of public instruction. He makes about the same statement, as that of Williams, as to Smith's coming in and presenting his certificate of election as teacher and the defect in the same, remarking, however, that Smith said the supervisor was away; and then says: Smith asked permission to remain in the room during the sitting of the board. I told him there would be no objection if he would not disturb us. We proceeded with the work and when the scrip, which was issued to him, was reached, he arose and stated that he gave that scrip to Mrs. Morrison, and had no more to do with it, and was not guilty. After talking about it a few minutes we proceeded and came to the scrip issued to R. L. Williams. Williams said

to Smith, that is the scrip I let you have. Smith said, you paid me the money for what you owed me. I did not get that scrip from you; you paid me the cash.

William McDaniel, the county treasurer, testified that he paid warrants 378 and 388 as warrants for $30.80 and $30.00, but stated, *on cross-examination*, that he never paid either of them to H. C. Smith, defendant, and never paid him any money on any warrants during the year 1891.

Mary M. Morrison, a witness for the State, testified : That Smith never gave her either of these two warrants ; and that she had been convicted of forgery at this term of the court, but had not been sentenced.

A. M. Michelson, a State witness, testified that defendant told witness that warrants 388 and 378 were delivered to defendant by R. L. Williams, and given by defendant to Mary M. Morrison, and that he had nothing to do with the forgery of them.

Lula Carter, a witness for defendant, testified that she saw defendant deliver warrant payable to R. L. Williams for $3, to Mary M. Morrison ; that she remembered it because they were in Mr. Parramore's store in Madison ; that Smith first handed it to witness, when she noticed it was for $3, and payable to R. L. Williams ; that witness saw his name on it and handed it back to Smith and told him it was not hers (witness'). He then handed it to Mrs. Morrison, and gave witness hers, which was for $22. This happened at Mr. Parramore's store about the first of June in this

town, at the corner at Parramore's store. *On cross-examination*, she stated that she was assistant teacher in academy No. 2 ; that her feeling toward Smith is that of any other common friend ; was not engaged to be married to him ; that the ring on her finger was not given to her by Smith, and is not an engagement ring; that she taught with him for three terms, and they are both single.

Chandler H. Smith testified he had known Smith for four years, and knew his reputation for honesty and truthfulness. Never heard anyone say anything against him ; that his character is good so far as witness knows. Cabel Carter, a witness for defendant, and father of Lula Carter, also testified that he had known defendant for two or three years, and that he had borne a good character all that time, and witness had never heard anybody say anything against him ; and stating, upon cross-examination, that he had no special good feeling for him ; that he had a good feeling for all good preachers and teachers ; that witness asked Tom Mc-Leary if he would go on Smith's bond, who said he would go on it for $50 ; witness was willing to go on it for $250 ; the bond was for $500 ; that H. J. McCall, attorney for Smith, asked witness to go on the bond and aid him in getting it up for Smith.

The statement made by Smith on the trial is as follows : I gave warrant No. 388 to Mrs. Morrison ; when I gave it, it was then a $3 warrant. It was at Mr. Parramore's store, on the sixth day of June, 1891. I had nothing to do with the forgery. I got nothing out of it.

I asked the board permission to stay while it was in session, because I did not want to be where I was not wanted. I wanted to see how the board conducted its business.

R. L. Williams, recalled, testified that the school commenced October 1st, and lasted eight school months ; a school month is twenty days. The school was out some time in May, 1891. The last scrip I issued to Lula Carter was issued May 16th, 1891 ; the account was approved April 28th, 1891. The scrip was issued in Madison county, Florida. There was no school taught in June last. I delivered the scrip to Smith the day it was issued.

As will appear in what is stated by the majority of the court in the sequel of this opinion, the conclusion reached is, that the testimony fails to sustain the verdict. In this conclusion I have not been able to concur. The forgery of the paper is clearly shown. That it went into the hands of the accused in an unaltered condition is also established. The conclusion of the majority of the court is that the testimony fails to connect the accused with the forgery of the instrument, or with the instrument in a forged condition. I concede that it is necessary for the testimony to connect the defendant with the forgery, and if there is no testimony to establish this fact, the verdict should be set aside. I concede further that the testimony connecting the accused with the forgery must be sufficient to satisfy the minds of the jury beyond a reasonable doubt, but where there is pertinent testimony bearing

upon the guilt of the accused, its sufficiency for this purpose is a question for the jury.    It is not controverted that the criminal connection of the accused with the forgery can be shown by circumstantial evidence, and that this character of evidence, if enough, can establish guilt.    Let us see what are the facts and circumstances bearing upon the guilt of the accused in the case before us.    First, he had an opportunity to commit the forgery, as the instrument in its unforged condition, went into his hands.    The indictment is based upon the paper issued to R. L. Williams, and delivered by him to the defendant.    Williams owed Smith three dollars, and offered to pay him cash, but Smith said scrip would do as well, as he could use it dollar for dollar.    Scrip at that time was at a discount of from ten to fifteen *per cent*.    He elects to take scrip, instead of cash, when he could only use the scrip at par.    These are the circumstances under which he received the order.    We next find Smith before the school board, at a meeting held to verify the orders of the County Treasurer.    It is true that he presented at this time to the chairman of the school board a recommendation from the patrons of a school as a teacher, but after doing this he asks permission to remain in the room during the meeting of the board.    The scrip issued to Smith was reached by the board, and found to be forged, and he stated that he knew nothing about it, but gave it to Mrs. Morrison as a $3.80 order. When the order issued to Williams, and which he testifies that he delivered to Smith, was reached and
28

found to be also forged, he denied receiving it, and said Williams paid him cash. This denial was made at the time the forgery was detected. There is no contradiction or explanation of this fact by Smith. As appears from the testimony of A. M. Michelson, Smith admitted receiving both of the orders in question from Williams, and delivered them to Mary Morrison, but stated that he had nothing to do with the forgery. Mary Morrison testified that Smith never gave her either of the two orders. The County Treasurer testified that he paid the two orders in their forged condition, but not to Smith. Williams says that the changed portion of the order upon which the indictment is based is not in Smith's ordinary handwriting. Before the school board Smith stated that he delivered order number 378, the one issued to him, to Mary Morrison, and denied having the one issued to Williams. He admitted to Michelson the possession of this order, and on the trial undertakes to show that he parted with it in an unforged condition to Mary Morrison. In this he is contradicted by her. Lula Carter says that she saw Smith deliver order number 388 to Mary Morrison about the first of June, and at the same time received her order from Smith for $22. She was teaching in the same school with Smith. In Smith's statement he says he delivered the order number 388 to Mary Morrison on the 6th day of June, 1891. Williams testifies that the last order he issued to Lula Carter was on the 16th day of May, 1891. In considering the effect of the testimony to sustain the verdict, however, we must proceed upon the theory

that the jury has the right to disbelieve that offered by the accused, and to base their verdict upon the State's evidence, if that be sufficient to justify the verdict. This is the exclusive province of the jury in weighing testimony. Are the facts and circumstances offered by the State sufficient to connect Smith with the forgery? To my mind they are strong, and amount to more than suspicion. Smith's election to take the order, then at a discount, in lieu of the money, his expressed desire to remain in the room when he knew that the board was checking up warrants, his denial that he ever had the order, when its forgery was detected, then his admission of this fact, and his position that he parted with it to a party who denies that he ever did so, are facts and circumstances showing a guilty connection with this paper, and if they satisfied the minds of the jury beyond a reasonable doubt, which, from the verdict, we must conclude was the case, I do not believe the appellate court should disturb their finding. To do so, it seems to me, would be to determine the sufficiency of evidence to produce on the minds of jurors a reasonable doubt, and this I believe is a question for the jury. They had before them the living witnesses, and an opportunity to observe their conduct and manner of testifying, all of which we do not have. In the case at bar I think the facts and circumstances tending to connect the accused with the forgery are strong enough to render it improper for the appellate court to disturb the deliberate finding

of a jury, and its sanction, on a motion for a new trial, by the presiding judge.

RANEY, C. J. (TAYLOR, J., concurring):

The testimony not only fails to prove that the alteration of the school order No. 388, described in the indictment, is in the handwriting of the prisoner, or to otherwise show directly that he altered it, or procured, or assisted in, or was present at, the alteration thereof, but it does not in any way connect the prisoner with the order after it had been altered. The order is not shown to have been passed or uttered by him in a forged condition, or to have ever been in his possession in that condition. The above observations, we may remark, are also equally true of the testimony as to the order No. 378. Treating as true the testimony of Mrs. Morrison, that the prisoner did not deliver the order No. 388 to her, and as false the contrary statement of Lula Carter, and of the prisoner, all of which it must be assumed the jury concluded, we still fail to find evidence to sustain the verdict. Not only is it not shown that the order was never in his possession in its altered condition, and that he never had any connection with it in that condition, but it is affirmatively shown by the uncontradicted testimony of a State witness that the order was paid, in its forged condition, to some one else than the prisoner. It can not be inferred from the mere fact that the prisoner had the order in

its honest condition, either that it was changed before it went into the hands of the party to whom it was paid, or that the prisoner was a party to such an alteration; nor is the possession of a forged order by one person, and the payment thereof to that person, evidence that a person in whose possession the order in its legal condition is shown to have previously been, altered such order, or was a party to such alteration; nor is the fact that Smith was willing to take the warrant instead of money when such warrant was at a discount, or it and the above facts, evidence sufficient to establish his connection with the alteration of the order. The same insufficiency attaches to the fact that the prisoner stated at the meeting of the school board that Williams had not given him the warrant numbered 388 (a fact of which Williams' memory also seems to have been doubtful at one time subsequently). Here there is nothing to show at what exact time before the presentation of the warrant for payment it was altered, nor anything that connects the defendant with that alteration. This connection can not be assumed, nor can a time of alteration sufficiently prior to such presentation to connect Smith with the alteration; they must be proved, and proved beyond a reasonable doubt, either directly or by circumstances inconsistent with any other reasonable hypothesis shown by the testimony. Wharton's Criminal Evidence, secs. 1, 2; Greenleaf's Evidence, vol. 1, secs. 13, 13$a$; Commonwealth vs. Costley, 118 Mass., 1; State vs. Porter, 34 Iowa, 131.

Circumstances may often be sufficient to excite suspicion without establishing guilt ; 8 Am. & Eng. Ency. of Law, 540 ; and we do not say that there are not circumstances of such suspicion shown by this record, but when the State shows, as it does here, that the forged instrument was in the hands of, and was paid to, some other person than the accused, but fails to connect the accused with the act of forgery, or with the instrument in its altered condition, or with the proceeds thereof, or even with the person to whom it was paid, we do not think that the circumstances of suspicion shown by this record are sufficient to establish guilt within the rule of law (as it is laid down by us in this opinion,) and where the testimony connects the defendant with the paper only in its honest condition.

The testimony, in our judgment, entirely fails to prove the guilt of the prisoner beyond a reasonable doubt, and can not be said to establish his guilt to the exclusion of any other reasonable hypothesis shown by the proofs. State vs. Morgan, 2 Dev. & Bat., 348, and Perkins vs. Commonwealth, 7 Gratt., 651, are not inconsistent with this conclusion.

For these reasons we think the judgment should be reversed and a new trial granted. It is ordered accordingly.