ANDREW J. WOOLDRIDGE, PLAINTIFF IN ERROR, v. THE
STATE OF FLORIDA, DEFENDANT IN ERROR.

1.  Though the county boards of public instruction are made
    corporations by statute, and authorized to act as such in a
    corporate name, yet a school warrant, drawn upon the
    treasurer of a county, signed by the chairman of the
    board and countersigned by county superintendent of pub-
    lic instruction, is not a mere brutum fulmen, but it imports
    such validity as to make it a subject of forgery.

2.  Where an indictment charged that the signature of the
    chairman of the board of public instruction to a school
    warrant was forged, and also that the name of the payee
    thereof endorsed thereon "J. W. B. by A. J. W.," was also
    forged, such indictment does not charge two forgeries,
    inasmuch as the signing J. W. B. by A. J. W. even
    though unauthorized by J. W. B. does not constitute for-
    gery; and in a prosecution of A. J. W. for forging said
    warrant it is not erroneous to ask J. W. B. the payee as a
    witness for the State whether he authorized A. J. W. to
    endorse his name on said warrant where the purpose of
    the question was to show an intent to defraud upon the
    part of A. J. W.

3.  It is not erroneous for the State Attorney, in a prosecution
    against a party for forging a school warrant, to ask the
    chairman of the county board of public instruction how he
    signed school warrants, it not being apparent that it
    would have been possible to introduce in evidence all
    the warrants which the witness had signed, and the ques-
    tion relating to a collateral matter.

4.  In a prosecution for the forgery of a school warrant by the
    county superintendent of public instruction, the chairman
    of the county board of public instruction, who was intro-
    duced as a witness by the State and who has had oppor-
    tunities for becoming acquainted with the handwriting of
    the accused, and was to some extent familiar with it, may
    be asked by the State Attorney whether the handwriting

in the body of certain warrants was that of the accused, over the objection that the witness was not sufficiently familiar with the handwriting of the accused to be a competent witness thereto.

5. In a prosecution for the forgery of a school warrant where the chairman of the county board of public instruction was introduced by the State as a witness and had testified that he did not sign, or authorize any one to sign for him, the warrant which was alleged to be forged and which purported to be signed by him, and on the cross-examination that it was not a fact that warrants were left signed by him in blank with directions to be filled out, it was not erroneous for the court to exclude the further questions as to whether or not it was the custom for the chairman or member of the board acting as chairman to sign warrants in blank with directions to be filled out afterwards.

6. Where assignments of error are based on the refusal of the trial judge to allow a witness to answer certain questions, and it appears from the record that all said questions were substantially answered at a subsequent stage of the proceedings, such assignments of error will not be considered by this court.

7. Where a witness' for the State states a fact in his testimony which the accused admits to be true, this court will not determine whether the trial court should have permitted certain questions on cross-examination, the object of which was to test the knowledge of the witness of the fact so admitted.

8. Where a person is on trial for the forgery of a county school warrant, he can not show as a defense that the alleged forgery has been condoned or ratified by the county board of public instruction.

9. A defendant in a criminal case can not complain of questions asked a State witness by the State Attorney, nor of the answers to such questions, touching matters which are not in dispute, and which though immaterial to the issue, could not have injured the defendant.

10. Section 1121 Revised Statutes of 1892, providing for a comparison of handwriting applies as well to criminal as civil

cases, and its provisions cover, for the purpose of comparison, not only the genuine writings of the party whose signature is alleged to be forged, but the genuine writings of the alleged forger.

11. The omission of a duty by the county superintendent of public instruction to post a school warrant in a warrant registry book is competent evidence tending to show a fraudulent intent on the part of the county superintendent on a trial of the latter in which he is charged with the forgery of said school warrant, and the warrant registry book may be introduced in evidence to show such omission.

12. Where the accused is on trial for the forgery of a school warrant, he being at the time of such alleged forgery the county superintendent of public instruction, it is competent to show that about the time of the alleged forgery, other similar warrants were forged by the accused, in pursuance of a general scheme to defraud.

13. Where, in a prosecution for forgery, evidence is introduced by the State, the effect of which was to show flight or concealment by the accused, and the accused subsequently testifies as a witness on his own behalf, and on cross-examination admits facts which show his flight or concealment in view of the probable discovery of the alleged forgery, objections to the evidence introduced by the State for the purpose of showing what is thus admitted, will not be considered by this court.

This case was decided by Division B.

Writ of Error to the Circuit Court for Jackson County.

STATEMENT.

At the spring term, 1901, of the Circuit Court of Jackson county the grand jury found an indictment against the plaintiff in error, Andrew J. Wooldridge, hereinafter called the defendant, in the following words, viz: "The

grand jurors of the State of Florida, duly empanelled and sworn to enquire and true presentment make for the body of said county of Jackson for the spring term of said court, A. D. 1901, upon their oaths do present that one Andrew J. Wooldridge, late of the county of Jackson and State of Florida, then and there being in said State and county on the 22nd day of December, A. D. 1900, did then and there feloniously and knowingly and with intent to defraud W. J. Daniel and Company, a firm composed of W. J. Daniel, W. K. Milton, John Milton, Jr., and W. J. Daniel, Jr., and the individual members of said firm as named above; and other persons whose names are to the grand jury unknown, make, and forge an order for money commonly called a school warrant, which said written order for money commonly called a school warrant was then and there in words and figures and numbers as follows, to-wit:

"No. 69.                                                 $50.00

State of Florida, Jackson County. To the Treasurer of Board of Public Instruction, Pay to the order of J. W. Bowen—Fifty Dollars from any money belonging to the County School Fund; for services as teacher in School No. ————— at Spring Hill.

Given at Marianna, Fla., this 22 day of December, 1900.

School Warrant. -

Countersigned A. J. Wooldridge, Secy. and Co. Supt. Pub. Inst.

E. P. MELVIN,
Chairman Co. Board Pub. Inst.'

And upon the back of same were the following endorsements:

'J. W. Bowen, by A. J. Wooldridge.'

And the grand jurors aforesaid do say that the said order for money, commonly called a school warrant, was then and there a forgery in this, that the same had never been signed by the said E. P. Melvin as chairman of the county board of public instruction, or by his authority; and that the said J. W. Bowen had not endorsed same or authorized the said Andrew J. Wooldridge to endorse same for him; and the grand jurors aforesaid sworn and enquiring as aforesaid, do say that the said Andrew J. Wooldridge did then and there, that is to say, on the 22nd day of December, A. D. 1900, did make and forge the said order for money aforesaid' and did knowingly and feloniously forge the name of 'E. P. Melvin' and the endorsement of J. W. Bowen as aforesaid, thereto with intent then and there to injure and defraud the said firm of W. J. Daniel & Co., and the individual members of said firm and other parties and persons to the grand jury unknown, against the form of the statute in such cases made and provided, to the evil example of all others in like cases offending, and against the peace and dignity of the State of Florida.

(Signed)                      J. WALTER KEHOE,
State Attorney for the 1st Judicial Circuit of the State
   of Florida."

On the 16th of June, 1903, Wooldridge moved to quash said indictment against him on the following grounds, viz: "1. That said indictment is vague, indefinite and uncertain.

2. That said indictment charges no offense against the laws of the State of Florida.

3. Because said indictment does not allege any liability upon the part of the county treasurer to pay the instrument alleged to be forged by the payee therein, had such order been valid and genuine.

4. Because said indictment does not allege that E. P. Melvin, at the time of the alleged forgery, was chairman of the board of public instruction of Jackson county, or that said Melvin was authorized to sign school warrants as such chairman.

5. Because the warrant alleged to have been forged is not of such nature or character as is calculated to deceive or defraud any one.

6. Because said indictment does not allege that A. J. Wooldridge was superintendent of public instruction of Jackson county at the time of the alleged forgery or had authority to sign the instrument alleged to be forged in such capacity.

This motion was denied, and the defendant excepted.

At the fall term, 1903, the defendant was tried, and convicted.

A motion to arrest the judgment, based on the same grounds as the motion to quash, was made and overruled. A motion for a new trial was made on the ground, among others, that the evidence did not show guilt beyond a reasonable doubt, and was overruled. The defendant was sentenced to four years imprisonment in the State prison, which judgment and sentence he seeks here to reverse. Such other facts as may be necessary will be given in the opinion.

*C. L. Wilson* and *Edwin R. Blow* (with whom was *W. H. Price* on the brief) for Plaintiff in Error.

*W. H. Ellis* Attorney-General, for the State.

HOCKER, J. *(after stating the facts.)*

Of the fifty-six assignments of error, nine are abandoned in the brief of plaintiff in error. To give each one of them an extended consideration would swell this opinion to a burdensome length.

The first assignment of error is based on the ruling of the trial judge denying the motion to quash the indictment, and the contention in the brief of plaintiff in error is, (a) that the board of public instruction of Jackson county is by statute (sections 236, 237, Rev. Stats. of 1892) a corporation with a certain name, and authorized to act under and in its corporate name, and not otherwise, and that the writing alleged to be forged, warrant 96, does not upon its face purport to be the act of the corporation, and shows no liability on the part of the corporation. A mere *brutum fulmen* is of course valueless, and can not be the subject of forgery (King v. State, 43 Fla. 211, 31 South. Rep. 254), but we do not think this warrant can be said to be an absolute nullity. In fact, this court has held that an order drawn by a county board of public instruction, approved by the board and directed to the county treasurer for the payment of money, is such an instrument within the meaning of our statute, as can be the subject of forgery. Smith v. State, 29 Fla. 408, 10 South. Rep. 894. At the time the forgery in the Smith case was committed, the act making the county boards of public instruction corporations was in existence. The warrant in this case was very similar in form to the warrant described in the indictment in the case at bar. It was drawn on the treasurer of Madison county and signed by the superintendent of public instruction and the chairman of the board of public in-

struction. The court says on page 424: "It is a writing which if genuine might apparently be of legal efficacy or the foundation of a legal liability against the board of public instruction of Madison county, and within the light of the authorities is such an instrument as can be forged." It was also held that where the forged writing was copied in the indictment it was not necessary to allege that the chairman of the board, and superinten-dent, as such, had authority to sign such an instrument. See also People v. Bibby, 91 Cal. 470. The next conten-tion (b) is that the indictment is bad for duplicity, and for the reason that it is indefinite and uncertain. The objection for duplicity is based on the fact that the in-dictment charges that the name of E. P. Melvin, chair-man county board pub. inst., was forged, and also that the signature of J. W. Bowen, the payee, was forged. In other words, that two distinct forgeries were committed. We think it is sufficient to say upon this point that the charge that the name of J. W. Bowen was forged by Wooldridge, as it appears on the face of the indictment does not constitute a forgery, however fraudulent it may have been. It is endorsed, "J. W. Bowen by A. J. Wooldridge." Wooldridge here assumes to sign Bowen's name by authority. If he had no authority, then he was guilty of a false assumption of authority, but not of forgery. 13 Am. & Eng. Ency. Law (2nd ed.) 1082, note 4. It is not shown in what respect the indictment is vague and indefinite.

The third and fourth assignments of error are based on the refusal of the court to strike out the answer of the State witness, J. W. Bowen, to the question: "Examine the endorsement on the back of that warrant (warrant No. 96 described in the indictment) and state whether or

not it is your signature." The answer being, "Profr. Wooldridge had no authority from me to endorse my name upon this paper." The objection to the answer was that it was "irrelevant and immaterial and the endorsement did not purport to be the signature of the witness." The State Attorney announced that the question was asked not to prove forgery of the name of Bowen, but for the "purpose of showing an intent to defraud." The contention by the plaintiff in error in his brief in support of his objection is the very opposite of that under his first assignment, *viz*: that the endorsement "J. W. Bowen by A. J. Wooldridge," if made by Wooldridge, did not constitute forgery, and the answer was, therefore, immaterial. The evidence tends to prove that the defendant endorsed the warrant in the manner shown by the indictment and presented it to W. J. Daniel & Co., bankers, who paid him money therefor. We think that inasmuch as a fraudulent intent is a material and essential ingredient in the crime of forgery, there was no error committed by the court in refusing to strike out the answer of the witness, as it had a direct bearing upon the question of fraudulent intent, and under the circumstances would tend to prove such intent, if the warrant in its making was forged by Wooldridge.

The fifth assignment is based on the overruling of the objection of defendant to the following question propounded by the State to its witness E. P. Melvin, *viz:* "In signing the warrants when Mr. Boney was not present how did you sign them?" The objection was that the question called for secondary evidence. The witness had stated that he, Mr. Boney and Mr. Bevis, were the members of the school board for the year 1900; that Mr. Boney was chairman; that when Boney was absent he generally

10 S C

discharged the duties of chairman, and transacted as such chairman such business as was necessary. It was not shown, nor is it apparent, that it would have been convenient or possible to introduce all the warrants the witness may have signed. Moreover the question related to a collateral matter, and parol evidence was competent. Bradner on Evidence, p. 244, section 24; Rodgers v. Crook, 97 Ala. 722, text 725, 12 South. Rep. 108; Smith v. Dinkelspiel, 91 Ala. 528, 8 South. Rep. 490. See, also, Boykin v. State, 40 Fla. 484, 24 South. Rep. 141.

The sixth and seventh assignments of error relate to refusal of the court to strike out the testimony of E. P. Melvin "that the writing of the body of the warrant offered in evidence by the State (warrant No. 85), was in the handwriting of Profr. Wooldridge," and to strike out the testimony of said witness "that the handwriting in the body of the warrant (warrant No. 69 offered in evidence by the State) was in the handwriting of Profr. Wooldridge." The witness Melvin had testified that he usually signed his name E. P. Melvin; that he lived in Jackson county, and was a member of the school board for the year 1900; that Mr. Boney was chairman, but that he, witness, acted as chairman when Boney was absent; that Profr. Wooldridge, the defendant, was county superintendent of public instruction. Warrant No. 85 was handed the witness who examined the same. He testified that he signed the name E. P. Melvin to said warrant; that Mr. Wooldridge signed his name over the words "county superintendent of public instruction," that he took the signature to be Wooldridge's as it was the way he usually wrote it; that Wooldridge usually filled out the body of the warrants; that the warrant (No. 85) was in the form used by the county board of public instruction of Jackson county in the year 1900; that it was Mr.

Wooldridge's duty as county superintendent to draw all warrants against the county at that time, and he usually performed that duty; that he had seen Wooldridge's handwriting for two years and was to some extent familiar with it; that he thought the handwriting indicated in the warrant (No. 85) was Wooldridge's; that he formed that opinion partially from the fact that it resembles his writing, and partially because it was his duty to fill them out. Warrant No. 85 was offered by the State for the purpose of showing the signature of E. P. Melvin, and the further purpose of showing the signature of A. J. Wooldridge for the consideration of the jury. In regard to warrant No. 69, about the same testimony was elicited. Witness testified that he signed this warrant, and that Wooldridge signed it in the lower left hand corner. The warrant purports to be signed E. P. Melvin, chairman co. board pub. inst." on the lower right hand corner, and "A. J. Wooldridge, sec'y and co. supt. pub. inst." on the lower left hand corner. The witness would not say that he could at all times identify Wooldridge's handwriting, but that the signature in the left hand corner resembled Wooldridge's writing as well as the filling out in the body of the warrant. It is contended that Melvin did not show sufficiently familiarity with Wooldridge's handwriting to be a competent witness in the matter, and the authority referred to is 15 Am. & Eng. Ency. Law, 258-259, and authorities cited. We do not think this authority, nor those cited, sustains the contention made, but rather the reverse. The testimony was proper as against the objection urged. 1 Greenleaf on Evidence (16th ed.) section 577; Thalheim v. State, 38 Fla. 169, 20 South. Rep. 938. See, also, State v. Hall, 16 S. Dak. 6, 91 N. W. Rep. 325.

The eighth and ninth assignments of error are based on

the refusal of the court to allow the defendant to ask the witness E. P. Melvin the following questions on cross-examination: "Do you know whether or not it was the custom of the chairman to sign warrants in blank with directions to be filled out afterwards and deliver to the proper person?" "Was it not a custom for the chairman or any member of the board acting as chairman to sign warrants in blank with directions to be filled out afterwards?" Warrant No. 96 described in the indictment had been introduced in evidence, Melvin had testified that he did not sign it, nor authorize any one to sign his name to it, and did not know anything about its being signed; that the handwriting on the lower left hand corner resembled that of A. J. Wooldridge, and also that the filling resembled the handwriting of Wooldridge; and on the cross-examination that he had seen Wooldridge's writing for nearly two years, but would not swear that the signature of the name E. P. Melvin was in the handwriting of A. J. Wooldridge; that it was not a fact that warrants were left signed by him in blank, with directions that they be filled out, and no blank warrants were ever signed by him. After this follow the questions presented in the eighth and ninth assignments of error. The witness had positively denied that he had ever signed any warrants in blank, and as warrant No. 96 upon which the charge of forgery was predicated purported to be signed by the witness Melvin as chairman, we do not perceive what bearing the custom of any other chairman would have upon the case. We find here no error in the ruling of the court.

The tenth, eleventh and twelfth assignments of error are based on the refusal of the court to allow the defendant to ask the witness Melvin on cross-examination the following questions: "Is it not a fact that after Mr.

Wooldridge's term of office had expired there was an investigation made on the first of April, and a number of warrants that had been issued during the last two years of his term of office were found to be illegal, and admitted to be illegal by you, that were signed by you?" "I will ask you if this is a legal warrant (referring to warrant No. 71), was it drawn before or after you signed it?" "Is it not a fact that you, acting as chairman of the school board of this county, signed warrants that were illegal and which you afterwards admitted to be illegal?" The record shows that "defendant proffered to prove by the witness that the warrant (No. 71) was signed by him, and that the same was illegal, and for the purpose of showing that the witness was in the habit of signing warrants before they were filled out, and if the warrant alleged to be forged was in fact signed by Melvin under these circumstances, there would be no forgery," and further "that there were numerous warrants which were signed by the witness about the time of the alleged forgery, which were illegal, and which were drawn for no valid indebtedness against the county." We deem it unnecessary to pass on these assignments, inasmuch as at a subsequent stage of the proceedings E. P. Melvin was re-introduced by the State, and on cross-examination practically answered all these questions. He then said: "There were about ten or twenty warrants, I don't remember the number, which were illegally drawn, that were signed by me * * * . I could not state whether the board ordered these warrants drawn or not. I can only state how warrants were usually drawn. The school board passed a standing order that all persons holdng claims against the school board should file their claims by Thursday of the week; that the school board met Saturday; that the superintendent should examine these accounts, and if found to be

correct, should have his warrants filled out. If any came in on that day, the warrants were filled out of the book. I think probably the superintendent had his name signed to the warrants when the accounts were correct. The board, of course ordered the signature of the chairman, and I usually did, when I was chairman pick up my pen, take it for granted it was all right, and signed my name; that is the way I claim I signed my name to warrants I should not have done. I just supposed they were all right. I thought they were. That's the custom, and that's the way we have been doing since McRae has been superintendent." McRae was the successor of Wooldridge as superintendent. This testimony was elicited on cross-examination, and evidently in answer to pertinent questions by the defendant, and shows clearly that illegal warrants had been signed by the witness, and how and why, from his standpoint, it occurred.

The thirteenth assignment of error is based on the refusal of the trial judge to allow the defendant to ask witness Melvin the following question: "Will you examine, these (referring to the name of A. J. Wooldridge written in several places on a piece of paper) and tell me whether any of those are the signature of Prof'r. Wooldridge?" The paper on which the name of Wooldridge was written was filed after the court had sustained the objection to the question. The record states that the question was asked for the purpose of testing the knowledge of the witness of the handwriting of A. J. Wooldridge, but it does not show who wrote the name of Wooldridge on the paper. It does not appear whether or not the names on the paper were genuine specimens of Wooldridge's handwriting.

Melvin was not introduced as an expert on handwriting, nor had he given an opinion that the name "E. P. Melvin" signed to the warrant mentioned in the indict-

ment or any other warrant in evidence, was in the handwriting of defendant. He had stated merely that in his opinion the name "E. P. Melvin" written as the payee in one of the warrants, and the signature of A. J. Wooldridge and other writing in the body of the warrants were in the handwriting of defendant. These facts were not disputed or contested by the defendant, who admitted when examined as a witness that the writing mentioned by the witness Melvin was genunine. Under these circumstances the court does not feel called upon to determine whether the Circuit Court should have permitted the question complained of in this assignment of error, for the defendant having testified to the genuineness of the writing has no right to complain that the court unduly restricted his right to cross-examine the witness produced by the State as to his knowledge of the fact so admitted.

The fourteenth and fifteenth assignemnts of error are based on the refusal of the court to allow the defendant to ask the witness Melvin the following questions, viz: "I will ask you Mr. Melvin, if it is not a fact that this warrant No. 96, the one alleged by the indictment to be forged, has been paid by the county?" "Is it not a fact that the school board of which you are a member, in regular session in this county, ratified and confirmed this warrant as being valid, by ordering the same to be paid?" The record shows that defendant stated he expected to prove by the witness, in answer to said last question, that subsequent to the issuance of said warrant the school board, with full knowledge of the facts, ratified and confirmed the warrants alleged to be forged, by ordering same to be paid. The last question is objectionable because it sought of the witness his opinion as to whether the subsequent payment of the warrant, was not a ratification of

.the warrant. We are furnished with no authority, and we know of none, which sustains the contention that the payment of a warrant alleged to be forged, can condone or ratify the forgery so as to make a condonation or ratification a defense to the alleged forgery in a criminal prosecution for the said alleged forgery. The authorities cited by defendant relate to the effect of a ratification of a forgery upon civil rights in civil actions. There was no error in the ruling of the court. State v. Tull, 119 Mo. 421, 24 S. W. Rep. 1010.

W. A. McRae was introduced by the State as a witness and testified that he succeeded Wooldridge in the office of county superintendent; that he taught school in the county for six years under Wooldridge; that he was pretty familiar with his handwriting; that he also had known E. P. Melvin about five years; that he had been a member of the school board since witness was superintendent, that he was by E. P. Melvin's writing as he was by Wooldridge's with reference to knowing it. He was shown warrants Nos. 69 and 85 which had been introduced in evidence and asked to examine the name E. P. Melvin in the body of the warrant, and the same name in the lower right hand corner in each of these warrants, and asked (a) whether either of these names compared with the signature of E. P. Melvin as he knew it, and if so which compared the closest, and (b) if he saw any difference in the name Melvin as it appeared in the body of the warrant and the signature of Melvin as he knew it. The defendant objected to these questions and the ruling of the court overruling the objections forms the basis of the sixteenth, seventeenth, eighteenth and nineteenth assignments of error. The objections urged to the first of these questions were that they called for the opinion of the wit-

ness who was not shown to be an expert, and upon  the ground that the jury would be as able to compare  the names as the witness, and that the question would bring the same answer as the question which looks the  most like Melvin's signature.   The objection to the last question was that the name Melvin in the body of the warrant did not purport to be the  writing of Melvin,  and that it was irrelevant and immaterial.   We do not see the relevancy or materiality of the evidence solicited by these questions.   There was no issue upon or dispute about the writing of the name E. P. Melvin in the body of  these warrants.   The defendant stated in his testimony that he wrote ·Melvin's name in the body of the warrant No. 85, and that it was a part of his duty as superintendent to fill out lawful warrants.   Both warrants 69 and 85 were lawful warrants signed by E. P. Melvin as chairman.   While the questions seem to be immaterial we do not see how the defendant was injured by them, or by the answers to them. We, therefore, do not think these assignments present any reversible error:

The State offered in evidence the minute book of the school board from page 185 to 397, which book went out of use in January, 1900, and also the minute book of said board used immediately subsequent to the former from page one to line 13 of page seven, which portions of said books the witness McRae, who succeeded Wooldridge as superintendent, testified were in the handwriting of Wooldridge.   The State Attorney offered this evidence for the purpose of showing the handwriting of Wooldridge, and for the purpose of showing the alleged  forgery of  the school warrant.   This evidence was objected to on the grounds that it was irrelevant and immaterial, and would unnecessarily encumber the record.   Section 1121 of Revised Statutes of 1892, provides:  "Comparison of a dis-

puted writing, with any writing proved to the satisfaction of the judge to be genuine, shall be permitted to be made by witnesses; and such writings, and the evidence of witnesses respecting the same, may be submitted to the jury, or to the court, in case of a trial by the court, as evidence of the genuineness, or otherwise, of the writing in dispute." The question of the competency of this evidence was not directly raised in the court below, but in view of its importance we have examined it. The contention here is that the quoted section does not apply to criminal cases. It is one of the sections taken from the English Common Law Procedure Act of 1854.

In Regina v. Aldridge, 3 F. & F. 781, it was held that the corresponding section in the Common Law Procedure Act, did not apply to criminal trials. Other provisions of the English statute as originally enacted, confined the section to civil cases, but after the decision mentioned an act was passed extending the section to criminal cases. 3 Wigmore on Evidence, note 1, section 2016; Note 62 L. R. A. 831.

It is a general rule that the principles applicable to the admissibility of evidence are substantially the same in civil and criminal cases. 12 Cyc. 390; Best's Principles of Evidence, section 94. There are no express words in our statute limiting its application to civil cases, though many of the sections of the Revised Statutes relating to the admissibility of evidence undoubtedly could only apply to civil cases. In the case of Myers v. State, 43 Fla. 500, ...... South. Rep. ......, this court applied one of the sections taken from the Common Law Procedure Act to that case. Our statute as originally enacted contained no language limiting it to civil cases, as did the English statute, and as the statute as included in the Revised

Statutes quoted above is broad enough to embrace both civil and criminal cases, prescribing a general rule of evidence we think it is applicable to both classes of cases. In State v. Hastings, 53 N. H. 452, this section was considered as embodying the most correct principles in regard to the much mooted question of the comparison of handwriting, and applied in that case. The curious student is referred to 1 Greenleaf on Evidence (16th ed.) section 581, text and note 2; Best on Ev. (Chamberlayne) 240, and note 1; People v. Molineux, 163 N. Y. 264—and 322 to 330, 61 N. E. Rep. 286, and State v. Farrington, 90 Iowa 673, 57 N. W. Rep. 606, for a discussion of the point in this case, as well as the many phases of this question.

In New York it was held that under a statute very similar to ours it was competent to give in evidence writings proved to be in the handwriting of the person whose signature the one in question purports to be for the purpose of comparison, but that it was not competent to admit in evidence writings of persons other than those of the person whose signature is in question e. g., the writings of an alleged forger. Peck v. Callaghan, 95 N. Y. 73. This ruling was followed in Tennessee under a similar statute. Franklin v. Franklin, 90 Tenn. 44, 16 S. W. Rep. 557; Powers v. McKenzie, 90 Tenn. 167, 16 S. W. Rep. 559. But in England the statute was construed more liberally. It was held that under its provisions it was proper to admit in evidence for the purpose of comparison, not only the genuine writings of the party whose signature was alleged to be forged, but the genuine writings of the alleged forger. Cresswell v. Jackson, 2 F. & F. 24; Cresswell v. Jackson, 4 F. & F. 1. See, also, Cobbett v. Kilminster, Ib. 490. The first decision was rendered in 1860, and as we adopted the statute after it had been so con-

strued, we are bound by that construction. The same view is entertained in Missouri. St. Louis National Bank v. Hoffman, 74 Mo. App. 203. See, also, State v. Goddard, 146 Mo. 177, 48 S. W. Rep. 82. The objection that this writing was not satisfactorily proven to be that of Wooldridge was not raised by the court below. There was evidence on this point given by McRae, not disputed by defendant when he was on the stand, and, moreover, there was a distinct admission by him that much of it was in his handwriting. There was no motion made to exclude the portions of the writings which were not admitted to be in his handwriting. The objection that this evidence would unnecessarily encumber the record is not urged here. We do not think the contention of the defendant is tenable.

The twenty-third assignment of error is not sustained because there was no objection made to the evidence offered and exception taken to the ruling of the trial court in admitting it.

The twenty-fourth assignment of error is based on the ruling of the court in admitting in evidence over the objection of defendant, page 102 of the warrant-registry book. The State offered the evidence to show an intent to defraud by Wooldridge in his failure to post warrant No. 96 and other warrants. McRae testified that the offered page was in his handwriting; that when he came into office the book was not posted to date; that the warrants dated December 22nd were posted by him; that the book shows the warrants drawn at each session of the board. It was the duty of the superintendent to post the warrants in this book. If Wooldridge failed to post the warrant described in the indictment, which the evidence tended to prove, we can not say that such an omission of

duty. might not tend to prove a fraudulent intent.  Sections 239 and 242, paragraph 9, Rev. Stats. of 1892.  If it did not have this effect, it was harmless to the defendant. We discover no error in the ruling.

Assignments twenty-four, twenty-five and twenty-seven have been examined, but we discovered no reversible error.

The thirtieth, thirty-third, thirty-fourth and thirty-fifth assignments are based on the action of the court in overruling defendant's objection to the introduction in evidence of certain warrants numbered 97, 99, 196, 104 and 94.  As to warrants 97 and 99, it was objected below that the evidence was irrelevant and immaterial.  Melvin testified that the signatures purporting to be his, are not his signatures, and that the handwriting resembled Wooldridge's.  There was also other evidence tending to show that these warrants were illegal, and that they, with warrant No. 96, were parts of a general scheme to defraud by Wooldridge.  They were, therefore, relevant.  Wallace v. State, 41 Fla. 547. text 562, 26 South. Rep. 713; Smith v. State, 29 Fla. 408, text 421, 10 South. Rep. 894.  As to warrants 196, 104 and 94, W. H. Milton, a banker, testified that he was familiar with Wooldridge's and Melvin's handwriting; that he believed the signature A. J. Wooldridge on left hand lower corner of each was that of the defendant.  The State Attorney did not announce the purpose he had in view in introducing this evidence.  We think, however, it was at least competent for the purpose of comparison, with the disputed signature to warrant No. 96, described in the indictment.  The foregoing remarks dispose of the thirty-sixth and thirty-seventh assignments of error.

The thirty-eighth and thirty-ninth assignments of error are based on the action of the trial judge in permitting the State to ask James A. Finlayson, the sheriff, the question: "Do you know whether or not any reward was offered for his arrest (referring to the arrest of Mr. Wooldridge)," and the refusal to strike out the answer: "There was a reward of one hundred dollars for the arrest of A. J. Wooldridge."

The forty-first and forty-second assignments of error are based on the overruling by the court of defendant's objections to two proclamations of the Governor, and the envelopes in which they were sent to the sheriff, offering a reward of one hundred dollars for the apprehension and conviction of A. J. Wooldridge, the defendant, one dated March 26th, 1901, the other dated April 5th, 1901. Mr. Finlayson, the sheriff, testified that he had received a good many communications from the Governor; that the signatures resembled that of the Governor, and that he was not acquainted with the Governor's handwriting except as he had received it. The only objections made in the court below to the questions embraced in the thirty-eighth and thirty-ninth assignments are that they were immaterial and irrelevant to the issue involved. The objections to the proclamations and the offer of reward were, that the proclamations are dated before the capiases for the arrest of Wooldridge were delivered to the sheriff; that the proclamations are not attested by the Secretary of State, and were not under seal of the State; that no proof of the execution of them by the Governor had been offered; that the signature of W. S. Jennings had not been proven; and that they were irrelevant and calculated to prejudice the defendant. The two porclamations purported to be signed by W. S. Jennings, Governor of Florida, the

envelopes in which they were sent, were directed to the sheriff of Jackson county, Marianna, Florida. The capiases, five in number, were delivered to the sheriff, June 7th, 1901. The sheriff testified that the defendant had lived at Sneads, Florida, for several years prior to January 1st, 1901; that he did not know where the defendant was from the latter part of January, 1901, to the time he was delivered to him (in 1903); that he made search for him and could not locate him anywhere in this (Jackson) county. McRae testified that about January 12th, 1901, W. V. Knott, State Auditor, came to Jackson county to examine the books of the county officials; that he audited the books of the county superintendent, during his stay of eight or nine days, and made a report of his investigation of said books to the school board, about the last of January. The defendant, himself, testified that in 1900 he was living at Sneads in Jackson county; that he had not been living there continuously since 1900; that he left Jackson county to go to Texas, and had been most of the time since 1900, in Texas and Indian Territory; that he left Jackson county in January, 1901, and did not take any of his family with him; that his son was with him part of the time; that he came back to Jackson county in 1903, because his family were in that county, and his health bad, and he was not doing much in Texas; that he knew he was indicted when he came back, and was on his way back when he was arrested; that he wrote to persons in Jackson county, giving his address as W. A. Jackson, and that he guessed "the reason he assumed the name W. A. Jackson was to prevent any of them from locating him;" that he knew the auditor, W. V. Knott, was examining his books before he left, and that the parties he wrote to were his attorneys, members of his family, and two personal friends.

The only purpose the State·could have had in introducing the evidence objected to, under the four foregoing assignments was to show that the defendant was evading a prosecution by flight or concealment under the authority of Carr v. State, 44 Fla. 11, 34 South. Rep. 892, and Gray v. State, 42 Fla. 174, text 179, 28 South. Rep. 53 There is authority holding that such evidence may be introduced for this purpose. State v. Lucey, 24 Mont. 295, ...... Pac. Rep. ...... ; State v. Foster, 8 La. Ann. 290; People v. Ogle, 104 N. Y. 511, 11 N. E. Rep. 53. We think the inevitable inference from the defendant's own testimony is that he left Jackson county in January, 1901, for the purpose of concealment, knowing that his books were being investigated. He gave no other reasonable explanation of his absence. The evidence. introduced could have had no other effect, and even though some of these rulings may have been erroneous, they were not such as under the circumstances would justify a reversal of the case. State v. Pancoast, 5 N. Dak. 514, 67 N. W. Rep. 1052, S. C. 35 L. R. A. 518; State v. Woodruff, 47 Kan. 151, 27 Pac. Rep. 842, S. C. 27 Am. St. Rep. 285.

There are a number of other assignments of error. They have each been articulately examined, and we discover no reversible error under any one of them. The evidence amply sustains the verdict.

The judgment is affirmed.

TAYLOR, P. J., and COCKRELL, J., concur.

WHITFIELD, C. J., and CARTER and SHACKLEFORD, JJ. concur in the opinion.